Filed 7/9/14  In re I.W. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re I.W., a Person Coming Under the Juvenile Court Law. | |
| C.W.,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF CONTRA COSTA COUNTY,<br><br>        Respondent;<br><br>CONTRA COSTA COUNTY CHILDREN & FAMILY SERVICES BUREAU,<br><br>        Real Party in Interest. | A141729<br><br>(Contra Costa County Super. Ct. No. J13-00673) |

C.W. (mother) petitions this court for extraordinary writ review of a juvenile court order setting a hearing under Welfare and Institutions Code section 366.26.[1]  She contends the juvenile court had insufficient evidence to find that she received reasonable reunification services and failed to adequately participate in court-ordered treatment.  She also contends that the court improperly relied on a statement that did not appear in the record.  We disagree with these contentions and deny her petition.

---

[1] All further statutory references are to the Welfare and Institutions Code.

1

# I.
## FACTUAL AND PROCEDURAL
### BACKGROUND

In May 2013, mother was arrested and incarcerated as the result of a probation violation. After the arrest, mother's cousin left mother's two-year-old daughter, I.W., in a babysitter's care without diapers, clothes, or shoes. I.W. was detained three days later after the babysitter reported to the Contra Costa County Children & Family Services Bureau (Bureau) that mother was a drug user and in custody. The Bureau filed a petition alleging that the juvenile court had jurisdiction over I.W. under section 300, subdivisions (b) and (g) because mother had a substance-abuse problem impairing her ability to parent I.W., had a history of leaving I.W. "in the care of multiple inappropriate caregivers," and was incarcerated. Mother was released from custody soon after I.W. was detained.

At the detention hearing, the juvenile court found that a prima facie showing had been made that I.W. was a child described in section 300. The court ordered that mother receive a minimum of two supervised visits per month. It also ordered that alcohol and drug testing, substance-abuse treatment, parenting education, and mental-health services be "referred pending further proceedings."

At the jurisdiction hearing in July 2013, mother pleaded no contest to the petition's amended allegation under section 300, subdivision (b) that she had a substance-abuse problem impairing her ability to parent I.W. The remaining allegations under section 300, subdivisions (b) and (g) were dismissed. The juvenile court's prior order regarding services and visitation remained in effect.

The social worker's disposition report, prepared in early September 2013, noted that mother had many arrests and convictions dating back to 2004. She also had a history of substance abuse, physically-abusive relationships, mental illness, and, according to a prior child-welfare referral, " 'housing instability.' " The report stated that since I.W.'s detention, mother had visited I.W. twice, but "then failed to confirm all subsequent visits . . . [and] missed all of her visits during the month[s] of July and August." I.W.'s

foster mother informed the social worker that mother had not contacted I.W. "in over six weeks."

The report stated that mother had met with the social worker in mid-July and had expressed a desire to reunify with I.W. But it also reported that mother had no further contact with the social worker and had not pursued reunification services, and it described the Bureau's concerns that mother "has not demonstrated that she is willing or able to maintain the visitation requirements with her child." Nevertheless, the report expressed a hope that mother would be able to "engage in reunification services," and it recommended that she receive them.

At about the same time that the report was prepared, mother was incarcerated again. A few weeks later, the disposition hearing was held. At the hearing, the juvenile court found by clear and convincing evidence that placing I.W. with mother would pose a substantial danger to I.W. The court allowed mother to have supervised visits with I.W. for a minimum of two hours each week. The court also ordered reunification services to be provided as proposed in the case plan. This plan recommended that mother participate in a domestic-violence program, individual counseling, a mental-health assessment, parenting education, an inpatient substance-abuse treatment program, alcohol and drug testing, and a 12-step program.

A six-month-review report was prepared in March 2014, and it stated that mother "had been incarcerated at West County Detention Facility" in Contra Costa County "[d]uring this reporting period." The report stated that the social worker had met with mother at the detention facility in October 2013, and mother had said she did not want to participate in the facility's substance-abuse program because "it was not helpful." Mother also "indicated she did not want her child brought to the detention facility." When the social worker tried to visit mother in December 2013, she learned that mother had been discharged the previous week. Mother "did not contact the Bureau upon her

release to visit with her child or to discuss this dependency" and was arrested again in January 2014.[2]

The report also attached an updated case plan. The plan stated that mother had not "demonstrated that she [was] able and willing to have custody of her child"; "complied with the court orders"; "developed a domestic violence relapse prevention plan"; "compl[ied] with her visitation plan"; "contacted the Bureau to request visitation"; "entered into a substance abuse treatment program"; or "drug tested for the Bureau." The report recommended that the juvenile court terminate mother's reunification services and set a hearing under section 366.26 while continuing to permit supervised visitation.

Mother was again released from the detention facility on April 8, 2014, and a contested six-month-review hearing was held on April 24. After the status-review report was admitted into evidence, the juvenile court heard testimony from the social worker. The social worker acknowledged that she had not tried to facilitate visits between mother and I.W. while mother was in the detention facility, that mother had never said she did not want custody of I.W., and that after the report was prepared, mother had expressed an interest in regaining custody of I.W.

Mother introduced three exhibits: a letter dated April 23 from a treatment program stating that mother had entered the program upon her release from custody on April 8 and that the program's graduation date was set for July 8; a letter dated March 13 showing that mother had enrolled in a parenting education program in the detention facility on March 3 and had completed three of the 31 required classes; and a drug-testing report indicating that mother had tested clean on the day she was released from the detention facility. The Bureau's counsel stipulated that mother was participating in 12-step meetings in the treatment program.

The social worker admitted that she was unaware of some information in mother's exhibits when she prepared her report. She also testified that she believed neither

---

[2] At the six-month-review hearing, it was established that this arrest was for a new offense and had resulted in mother's return to custody at the same detention facility.

4

domestic-violence counseling nor mental-health assessments had been available at the detention facility and did not know whether individual counseling had been available. Finally, she confirmed that mother had complied with some of her responsibilities under the case plan, including signing all the necessary consents and releases, refraining from being involved in domestic violence, and securing safe housing.

The juvenile court found by clear and convincing evidence that (1) the Bureau had provided or offered reasonable services to mother; (2) I.W.'s return to mother would create a substantial risk of detriment to I.W.; and (3) mother had failed to contact and visit I.W. It then terminated mother's reunification services and set a hearing under section 366.26 for August 21, 2014. It also found that visitation with mother would be detrimental to I.W. and, contrary to the Bureau's recommendation, ordered that no further contact between them occur.

## II.
### DISCUSSION

### A. *Mother's Objection to the Juvenile Court's Finding that She Was Provided Reasonable Reunification Services Was Forfeited and Is Without Merit.*

Mother contends that the order setting the section 366.26 hearing must be reversed because the juvenile court improperly found that she was provided with reasonable reunification services. She argues that this finding was improper because the Bureau failed to ensure visitation between her and I.W. from early September 2013 through the date of the six-month-review hearing in April 2014. We conclude that mother forfeited this issue by failing to raise it until the six-month-review hearing, and we further conclude that the contention fails on its merits.

The law regarding a parent's obligation to timely contest the provision of reunification services is clear. "[A] parent [may not] wait silently by until the final reunification review hearing to seek an extended reunification period based on a perceived inadequacy in the reunification services occurring long before that hearing." (*Los Angeles County Dept. of Children etc. Services v. Superior Court* (1997) 60 Cal.App.4th 1088, 1093.) Here, mother did precisely that by remaining silent about

5

reunification services until April 2014.  Throughout this case, mother was represented by counsel, and she makes no claim that she was prevented from communicating with her attorney due to her incarceration or for any other reason.  We conclude that mother has forfeited her claim.

Furthermore, we conclude that mother's claim fails on its merits because substantial evidence supports the juvenile court's ruling that the Bureau offered mother reasonable reunification services.  Again, the law is clear.  If a juvenile court does not order a minor to be returned to a parent's custody at the six-month-review hearing, it must "determine whether reasonable services that were designed to aid the parent . . . in overcoming the problems that led to the initial removal and the continued custody of the child have been provided or offered to the parent . . . and shall order that those services be initiated, continued, or terminated."  (§ 366.21, subd. (e).)  The court may not set a hearing under section 366.26 unless it finds by clear and convincing evidence that reasonable services have been provided.  (§ 366.21, subd. (g)(1)(C); Cal. Rules of Court, rule 5.708(m).[3])  We review the court's finding that reasonable services were provided for substantial evidence, which requires us to "review[] the evidence in a light most favorable to the prevailing party and indulg[e] in all legitimate and reasonable inferences to uphold the court's ruling."  (*Katie V. v. Superior Court* (2005) 130 Cal.App.4th 586, 598; see also *In re Julie M.* (1999) 69 Cal.App.4th 41, 46.)

A social services agency is required to "make a good faith effort to develop and implement a family reunification plan.  [Citation.]  '[T]he record should show that the . . . agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult . . . .'  [Citation.]"  (*Amanda H. v. Superior Court* (2008) 166 Cal.App.4th 1340, 1345.)  The agency must make this effort "in spite of difficulties in doing so or the prospects of success."  (*In re Taylor J.* (2014) 223 Cal.App.4th 1446,

---

[3] All further rule references are to the California Rules of Court.

1451.)  "The adequacy of a reunification plan and of [a social services agency]'s efforts are judged according to the circumstances of each case."  (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1362.)

A reunification plan normally must include visitation, which should "be as frequent as possible, consistent with the well-being of the child."  (§ 362.1, subd. (a)(1)(A); *In re Luke L.* (1996) 44 Cal.App.4th 670, 679.)  Despite the " 'obvious obstacles to visitation' " when a parent is incarcerated, visitation must still be provided to such parents "where appropriate."  (§ 361.5, subd. (e)(1)(C); *In re Precious J.* (1996) 42 Cal.App.4th 1463, 1478.)  A juvenile court must "consider the particular barriers to an incarcerated . . . parent's access to . . . court-mandated services and ability to maintain contact with his or her child" "[i]n determining the content of reasonable services."  (§ 361.5, subd. (e)(1).)

These legal standards were satisfied here.  To begin with, mother's own actions, not the Bureau's, are primarily to blame for the lack of visits between mother and I.W.  Soon after she was incarcerated in September 2013, mother told the social worker that she did not want I.W. to be brought to the detention facility.  And mother was refusing to participate in substance-abuse treatment at the facility even though it appears that visits were conditioned upon the completion of such treatment.[4]  We can hardly fault the Bureau for not arranging visits during mother's incarceration in light of mother's expressed wishes and failure to comply with the necessary preconditions for visits.  (See *In re Nolan W.* (2009) 45 Cal.4th 1217, 1233-1234 [" ' "[r]eunification services are voluntary, and cannot be forced on an unwilling or indifferent parent" ' "].)

Furthermore, when mother was released from the facility in December 2013, she apparently made no attempt to inform the Bureau of her whereabouts or to visit I.W. until after she was reincarcerated.  "While it is true the social worker is charged with maintaining reasonable contact with the parents during the course of the reunification

---

[4] A handwritten note on the minute order from the disposition hearing states, "Visits may commence upon release from in-patient program."

plan, he or she cannot do so without some degree of cooperation from the parent." (*In re T.G.* (2010) 188 Cal.App.4th 687, 698-699 [concluding social worker "did all that was required under the circumstances" to facilitate reunification services where parent did not inform social worker that he had been incarcerated].) Even if the Bureau had been able to contact mother during this period, it had no "responsibility to 'take [her] by the hand' to ensure [she] maintained regular visitation." (*Los Angeles County Dept. of Children etc. Services v. Superior Court*, *supra*, 60 Cal.App.4th at p. 1092.)

Finally, by the time mother expressed a renewed interest in visitation in April 2014, it was only days before the six-month-review hearing, which marked the expiration of the standard reunification period for children, like I.W., who are under three years old when initially removed. (See § 361.5, subd. (a)(1)(B).) This was "simply too late." (*In re T.G.*, *supra*, 188 Cal.App.4th at p. 699.)

The decisions mother cites are distinguishable. In *In re Precious J.*, *supra*, 42 Cal.App.4th 1463, Division Two of this court concluded that reasonable services had not been provided where the social services agency failed to "arrange[] even a single meeting between" an incarcerated mother and her infant, even though the juvenile court had ordered that visitation occur. (*Id.* at pp. 1467-1468, 1477, italics omitted.) But unlike mother here, who specifically stated she did not want visits with I.W. while incarcerated, the mother in *Precious J.* "made her desire for visitation abundantly clear." (*Id.* at pp. 1477-1478.)

In *In re Brittany S.* (1993) 17 Cal.App.4th 1399, the Court of Appeal concluded that the social services agency inadequately provided for visitation between an incarcerated mother and her toddler where "the service plan limited contact to telephone calls and letters," even though the mother was within 40 miles of the child's residence and such limited contact "should be used only as a last resort" when a child is so young. (*Id.* at p. 1407.) Similarly, the plan in *In re Monica C.* (1995) 31 Cal.App.4th 296 only provided for telephone calls and letters between the incarcerated mother and her young child. (*Id.* at pp. 299-300, 306.) Here, however, the case plan and court orders did not prevent visitation between mother and I.W. while mother was in custody. It was

8

mother's desire, not the Bureau's, that visitation not occur at the detention facility. We conclude that substantial evidence supports the juvenile court's ruling that mother was provided with reasonable services.

> B. *The Juvenile Court Did Not Find, and Was Not Required to Find, that Mother Failed to Participate and Make Substantive Progress in the Case Plan.*

Mother contends that there was not clear and convincing evidence to support the juvenile court's finding that she "failed to participate regularly and make substantive progress in court-ordered treatment." We reject this claim because the court made no such finding and was not required to do so.

Section 366.21 and rule 5.710 establish circumstances under which a juvenile court may schedule a hearing under section 366.26. (§ 366.21, subd. (e); rule 5.710(c)(1).) One such circumstance is if the child was "under three years of age on the date of the initial removal" and the court "finds by clear and convincing evidence that the parent failed to participate regularly and make substantive progress in a court-ordered treatment plan." (§ 366.21, subd. (e); rule 5.710(c)(1)(D).) Another such circumstance is if the court "finds by clear and convincing evidence that the parent has failed to contact and visit the child for six months after reunification services have begun, whether or not jurisdiction was originally asserted under section 300, subdivision (g)." (*Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1017; § 366.21, subd. (e); rule 5.710(c)(1)(A).) In other words, while a court may schedule a hearing under section 366.26 where it finds that the parent failed to participate regularly and make substantive progress in a court-ordered treatment plan, it may *also* schedule such a hearing when it finds that the parent failed to contact and visit a child.

Here, the juvenile court discussed mother's plan compliance but did not make a finding that mother "failed to participate regularly and make substantive progress in" that plan. (§ 366.26, subd. (e).) It did, however, "[f]ind by clear and convincing evidence that . . . mother . . . failed to contact and visit the child." This finding enabled the court to

9

properly schedule a section 366.26 hearing.  (§ 366.21, subd. (e); *Sara M. v. Superior Court*, *supra*, 36 Cal.4th at p. 1017.)

Mother also argues that the juvenile court "fail[ed] to sufficiently consider the barriers that [she] was faced with while in custody for the majority of the reunification period."  We recognize that in determining whether a parent has failed to contact and visit a child, a court must "take into account any particular barriers to [the] parent's ability to maintain contact with his or her child due to the parent's incarceration."  (§ 366.21, subd. (e); rule 5.710(c)(1)(A); see also § 366.215.)  But mother points to nothing in the record to suggest that the court failed to do so, citing only her progress in drug treatment since her release.  We do not see how this progress shows that mother was prevented from contacting or visiting I.W. while in custody.  Nor does mother identify any actual barriers that prevented her from contacting and visiting I.W.

Mother also argues that the record "amply demonstrate[s] compelling factual grounds" to establish that there was "a substantial probability" that I.W. could be returned to her within six months because her treatment program was to end this month, and she then plans to enter another program where I.W. could live with her.  (See *Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 688-689.)  We are not persuaded.  During the six-month-review hearing, mother's counsel stated that "[m]other is . . . hoping to be able to move to the Wollam House which offers [the] ability to have your child placed with you while you're going through this treatment."  This statement by counsel demonstrates mother's wishes, but it is not evidence of a likelihood that mother will actually enter a treatment program that accommodates children.  And even assuming that mother was to enter such a program, that fact would not establish a substantial probability that I.W. may safely be returned to her.  Although mother had made some progress in her case plan, she had not been in contact with I.W. for months, had been in and out of custody since I.W.'s detention, and had left unfinished many of the case plan's objectives.  These factors lead us to conclude that the juvenile court properly set a hearing under section 366.26.

*C.*     *The Juvenile Court Did Not Rely on a Statement Outside the Record.*

Finally, mother claims that "the [juvenile] court relied upon a statement of opinion that was not part of the evidentiary record," an error that was "per se harmful" and independently requires reversal of the order setting the section 366.26 hearing.  She takes issue with the statement that "[mother] needs to take responsibility, as Ms. Ramirez said, and move forward instead of going to the past and blaming the past for where she is now" because there was no "Ms. Ramirez" at the hearing or mentioned in the six-month-review report.  The Bureau's counsel made this statement, however, not the court.  It appears that counsel was referring to statements made by the minor's counsel and mistakenly used the wrong name.  There was no legal error, much less one requiring reversal of the court's order setting a hearing under section 366.26.

III.
DISPOSITION

The petition for extraordinary writ relief is denied on the merits.  (Rule 8.452(h)(1); see § 366.26, subd. (*l*).)  The request for a stay of the hearing under section 366.26 scheduled for August 21, 2014, is denied as moot.  This decision shall be final immediately in the interests of justice.  (Rule 8.490(b)(2)(A).)


_____
Humes, J.


We concur:


_____
Reardon, Acting P.J.

_____
Rivera, J.

11