Filed 2/21/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re TAYLOR J., a Person Coming Under the Juvenile Court Law. | B248839<br>(Los Angeles County<br>Super. Ct. No. CK87897) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>JANET W.,<br><br>      Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. Mark A. Borenstein, Judge. Reversed.

Linda J. Vogel, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Stephen D. Watson, Deputy County Counsel, for Plaintiff and Respondent.

_____

Janet W. (Mother) appeals from an order terminating reunification services for her and her 15-year-old daughter, Taylor J. The sole issue is whether substantial evidence supports the court's finding that the Department of Children and Family Services (DCFS) provided adequate reunification services to the family. (*Melinda K. v. Superior Court* (2004) 116 Cal.App.4th 1147, 1158.)[1] We conclude that the court's finding is not supported by substantial evidence.

## FACTS AND PROCEEDINGS BELOW

In August 2011, the juvenile court adjudicated 13-year-old Taylor a dependent of the court after finding that Taylor's mother and her stepfather, Joseph P. "have a history of engaging in violent altercations, in [Taylor's] presence"; that Joseph P. "was frequently under the influence of alcohol during these altercations; that on one occasion Joseph struck Taylor in the face inflicting bruises and scratches; and that Mother failed to protect Taylor from Joseph." The court placed Taylor in foster care and ordered DCFS to provide Mother and Taylor with family reunification services. As part of its case plan the court ordered Mother to participate in DCFS-approved counseling including a "domestic violence support group" and "conjoint counseling" with Taylor if recommended by Taylor's counselor. The court ordered DCFS to make "low cost" or "no cost" referrals for counseling.

A month prior to the adjudication hearing, DCFS gave Mother two referral lists, one of the lists identified an agency in Duarte (near Monrovia where Mother lived) that provided "domestic violence services." The other list was seven years old and did not list any counseling agencies near Mother's home. Neither list included agencies that offered individual counseling for adults. The record contains no evidence that Mother attempted to contact any of these agencies except for the Pacific Clinic discussed below.

At the six-month review hearing held in April 2012, the court received a Status Review Report from DCFS stating that Mother "will explore enrolling in [a] domestic

---

[1]     Mother did not forfeit this challenge by failing to raise it below. (*Melinda K. v. Superior Court*, *supra*, 116 Cal.App.4th at p. 1158.)

2

violence program at the Chicana Service Action Center." The record does not reflect the result of that exploration. The report also stated that the DCFS worker will follow up with Mother's therapist at Pacific Clinic regarding his credentials and, if appropriate, his assessment regarding Mother's need to attend Al-Anon. Mother's complaint that she did not have the money to pay for parenting classes or individual and conjoint therapy was rejected by the DCFS worker who pointed out in her report that Mother sent Taylor $30 a week and "over $300 for Christmas." DCFS also submitted a form signed by Mother acknowledging that she had been provided with referrals for domestic violence counseling. The record contains one such referral. Its date is illegible. The hearing was continued to May 2012 for further evidence and argument. After several more continuances the hearing was held in October 2012.

At the October 2012 hearing, the court admitted in evidence DCFS reports dated April 5, May 22, and July 20, 2012. Each report stated that Mother was "non-compliant" with the court's counseling requirements.

The April 5 report asserted that Mother was not in compliance with the counseling component of her case plan. Mother reported that she completed counseling at Pacific Clinic but DCFS had been unable to confirm that claim with the agency. In addition DCFS reported that it had not received any information from Mother as to her participation in a domestic violence support group and an Al-Anon program.

In the May 22 report DCFS advised the court that Mother was not in compliance with her counseling requirements. The Pacific Clinic program she attended was not a therapeutic program but a two-session program "focusing on removing barriers to gainful employment and school." The domestic violence program Mother claimed to be attending was not acceptable to DCFS because it was an online program and, in any event, DCFS had been unable to verify Mother's participation in the program. Again, DCFS claimed it had received no information that Mother was participating in an Al-Anon program.

The July 20 DCFS report stated that Mother was not complying with the court's counseling requirements because she reported that she was not participating in counseling, not participating in a domestic violence support group and not participating in Al-Anon meetings.

Despite being told by DCFS that Mother was "non-compliant" with all of her counseling requirements, the court found that: "Mother has . . . made significant progress in resolving the problems that led to the child's removal from the home, and that she has demonstrated the capacity and ability both to complete the objectives of her treatment plan and to provide for the children's [*sic*] safety, protection, physical and emotional well being. The court finds that there is a substantial probability that the child(ren) [*sic*] will be returned to the custody of the parents [*sic*] within the next period of review and continues family reunification services." Taylor remained in foster care.

On December 1, 2012, Mother moved to Victorville in San Bernardino County. The record shows, and Respondent concedes, that DCFS never gave Mother any San Bernardino County referrals.

The 18-month review hearing was held in March 2013. The court admitted reports from DCFS dated January 17 and March 14, 2013. Again, the reports advised the court that Mother was not in compliance with the court's counseling requirements.

In the January 17 report DCFS advised the court that it had provided referrals for the court-ordered counseling programs on four occasions "[y]et, as of the writing of this report neither mother nor step-father have completed any of the court orders made 16 months ago at the Disposition hearing." The report went on to state that "[Mother] has not made any progress in her court orders [*sic*] and is not in compliance with her case plan." DCFS reiterated that Mother's participation in online programs was not sufficient to meet her counseling obligations.

The March 14 report stated that DCFS warned Mother in November 2012 that it did not approve online courses and that it was "imperative that mother engage in the court ordered programs in person as opposed to online courses." Because Mother did not

4

show participation in any courses that were not online, "DCFS stands by its previous statements that [Mother] did not comply with any of the orders made by the Court." With respect to conjoint counseling with Taylor, the report stated that Mother told the DCFS worker she and Taylor "have a great relationship" and "do not have a need for therapy." Mother also said that she is working four to five days a week, going to school and lives over 90 miles from Taylor's foster home so there was no way she could go to Long Beach for counseling sessions.

Although just five months earlier the court found that Mother was making "significant progress" and found a "substantial probability" that Taylor would be returned to Mother's custody within the next review period, this time the court found that despite "reasonable efforts" by DCFS to enable Taylor's safe return home, Mother "is not in compliance with the case plan" and Taylor's return to Mother's physical custody "would create a substantial risk of detriment to the physical/emotional well-being of the minor." The court terminated family reunification services but did not terminate Mother's parental rights. The court ordered that Taylor remain in foster care and that Mother have unmonitored visits.

Mother filed a timely appeal from the termination of family reunification services.[2]

---

[2] Stepfather, Joseph P., is not a party to this appeal.

5

## DISCUSSION

Mother contends that the court erred in terminating reunification services because substantial evidence does not support the court's finding DCFS provided reasonable reunification services. We agree.

Family preservation is the first priority in dependency proceedings unless parental rights are terminated. Reunification services implement the law's strong preference for maintaining the family relationship if at all possible. Consequently DCFS must make a ""good faith effort""" to provide reasonable services responsive to the unique needs of each family through a plan that is "'specifically tailored to fit the circumstances of each family [citation], and . . . designed to eliminate those conditions which led to the juvenile court's jurisdictional finding. [Citation.]'" The effort must be made to provide reasonable reunification services in spite of difficulties in doing so or the prospects of success. The adequacy of the reunification plan and of the department's efforts to provide suitable services is judged according to the circumstances of the particular case. (*Mark N. v. Superior Court* (1998) 60 Cal.App.4th 996, 1010-1011.) In other words, Mother's difficulty meeting the case plan's requirements does not excuse the agency from continuing its effort to bring Mother into compliance with the court's orders.

It is undisputed that Mother did not complete the domestic violence victim counseling and individual therapy ordered by the court. DCFS, and to some extent, the court, however, share the blame in the failure.

Mother could have made more of an effort to find DCFS-approved, accessible counseling services. For example, there is no evidence that she followed up on counseling at the Chicana Service Action Center or that she investigated other agencies on the DCFS referral list even though the list was out of date. Furthermore, Mother should have known that Pacific Clinic's two-hour session on eliminating barriers to employment and school was not what the court had in mind when it ordered individual counseling.

6

The juvenile court injected uncertainty into the counseling requirement when it found that Mother was making "significant progress" in resolving the problems that led to Taylor's dependency at the same time DCFS was reporting Mother was not in compliance with her counseling requirements.

The foremost blame, however, lies with DCFS because it, not the parent or the court, is charged by the Legislature with providing reasonable family reunification services. (Welf. & Inst. Code, § 361.5, subd. (a).) Family reunification services are not "reasonable" if they consist of nothing more than handing the parent a list of counseling agencies when the list contained the name of only one domestic violence victim counseling agency in proximity to Mother's home. Furthermore, although Mother was ordered to participate in individual counseling, the list did not contain the names of individual counseling agencies.

The record contains other examples of DCFS failing to provide reasonable services to Mother. Although the court ordered DCFS to provide Mother with referrals to "low cost" or "no cost" counseling, when Mother told the DCFS worker that she needed money for counseling the worker's response was only to note that Mother "was sending Taylor $30 each week and over $300 for Christmas."

DCFS knew in July 2011 that Mother was enrolled in counseling at Pacific Clinic but did not investigate the appropriateness of that counseling until nearly a year later, in May 2012. It was the DCFS worker's duty "to maintain adequate contact with the service providers and accurately to inform [Mother] of the sufficiency of the enrolled programs to meet the case plan's requirements." (*Amanda H. v. Superior Court* (2008) 166 Cal.App.4th 1340, 1347.) The record does not show that after DCFS determined the Pacific Clinic program was inadequate it gave Mother any advice or assistance in locating an approved program.

There is no evidence that at the time the court ordered Mother to participate in counseling, DCFS advised her that online programs were unacceptable. It was not until five months before the 12-month review hearing that the DCFS worker found out that

7

Mother was participating in an online domestic violence program and told Mother online programs were not acceptable to DCFS. The record does not show that the worker made any effort to assist Mother to find an alternative person-to-person program in the vicinity of her home and one that she could afford.

Despite the court's order at the 12-month review that DCFS continue providing family reunification services to Mother and Taylor, it is undisputed that DCFS provided no reunification services to Mother between the 12- and 18-month reviews. DCFS argues it was excused from providing further reunification services because at the 12-month review Mother claimed that she had completed the required counseling programs. Thus, DCFS claims, any error it committed in not providing Mother further counseling referrals after being told to do so at the 12-month review was "induced" by Mother and cannot be raised on appeal because of the "doctrine of invited error." We do not agree. As discussed above, DCFS did not accept Mother's claims that she had completed her programs. It told her the online programs were not acceptable. It cannot now claim that it was "induced" into not providing services because Mother claimed she no longer needed them.

On the record before us, DCFS failed to demonstrate that it provided Mother and Taylor with reasonable reunification services. "The remedy for a failure to provide reasonable reunification services is an order for the continued provision of services, even beyond the 18-month review hearing." (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 975.)

**DISPOSITION**

The court's order terminating family reunification services is reversed and its finding that appellant received reasonable reunification services is vacated. The cause is remanded to the court to enter a new order finding that reasonable reunification services were not provided and to order the Department of Children and Family Services to provide such services for a period of time the court deems reasonable.

CERTIFIED FOR PUBLICATION.

ROTHSCHILD, Acting P. J.

We concur:

CHANEY, J.

JOHNSON, J.

9