Filed 8/24/15  In re Jason H. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re JASON H., a Person Coming Under the Juvenile Court Law. | B255838/B259123 (Los Angeles County Super. Ct. No. CK79614) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JASON H., SR.,<br><br>Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Margaret Henry, Judge, and Veronica S. McBeth, Judge (Retired Judge of the L.A. Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.).  Reversed and remanded.

Eva E. Chick, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

_____

**INTRODUCTION**

Jason H., Sr., (Jason H.) appeals from the juvenile court's orders at the six-month and 12-month review hearings (Welf. & Inst. Code, § 366.21, subds. (e), (f))[1] finding that the Los Angeles County Department of Children and Family Services provided him reasonable reunification services as to his son, Jason H., Jr. (Jason). In the first appeal (case No. B255838), which is from an order at the six-month review hearing, Jason H. argues that, between the disposition hearing and six-month review hearing, the Department did not assist him in complying with his court-ordered case plan and did not offer him reasonable reunification services. In the second appeal (case No. B259123), which is from an order at the 12-month review hearing, Jason H. argues that, between the six-month review hearing and the 12-month review hearing, the Department did not provide him reasonable reunification services, and that the juvenile court violated his due process rights by denying his request for a contested hearing on whether the Department provided him reasonable services. We reverse the juvenile court's orders finding that the Department provided Jason H. with reasonable services because those findings are not supported by substantial evidence.

**FACTUAL AND PROCEDURAL BACKGROUND**

*A. The First Appeal*

On June 5, 2013 the Department filed a dependency petition on behalf of Jason (then seven months old) and Jason's half-brother (then two and one-half years old), alleging that Jason H. and the children's mother, R.C., had placed the children at risk of physical harm by "enga[ing] in violent altercations in the presence of the children." (See § 300, subd. (a).) The petition alleged that both parents had violated a criminal protective

---

[1]    All statutory references are to the Welfare and Institutions Code.

order issued to protect Jason and his half-brother and by engaging in domestic violence in the children's presence they had failed to adequately protect them.  (See § 300, subd. (b).)

At the detention hearing the court found that Jason H. was Jason's presumed father.  The court detained Jason and his half-brother and placed them with their maternal great aunt.

The Department's jurisdiction and disposition report included a report from the Los Angeles County Sheriff's Department detailing an April 2013 incident in which Jason H. threatened to kill R.C. after the two had argued over custody of Jason.  The report also described a May 2013 incident in which Jason H. physically assaulted R.C. in front of the children.  A later report from the Department stated that Jason H. had been arrested on June 25, 2013 and was incarcerated at Men's Central Jail in Los Angeles. The Department also reported that Jason would be able to visit Jason H. at the jail, but that there would be no physical contact and the visits would have occur by telephone and through secured glass.

At the continued jurisdiction and disposition hearing on August 7, 2013 the court sustained the dependency petition with respect to R.C. and Jason H.,[2] declared Jason a dependent of the court, removed him from his parents' custody, and placed him with a relative caretaker.  The court ordered the Department to provide R.C. and Jason H. with family reunification services.  Jason H.'s case plan required him to participate in individual and domestic violence counseling, anger management, and parenting classes. The court authorized Jason H. to have monitored visitation with Jason, and scheduled a six-month review hearing for February 2014.

In anticipation of the six-month review hearing the Department submitted a status report stating that, since the jurisdiction and disposition hearing in August 2013, neither the Department nor Jason had had any contact with Jason H.  The Department reported: "At this time, [Jason H.] continues to be incarcerated.  This writer has no information

_____

[2]    The court sustained the section 300, subdivision (a), allegation and dismissed the section 300, subdivision (b), allegation.

regarding [Jason H.'s] compliance with the case plan. The Department will make all reasonable efforts to obtain said information. If information is received prior to the court date a last minute [information report] will be provided to [the] Court with updated information." The report also noted that the case worker originally assigned to Jason's case was on medical leave, and that the Department had assigned a new case worker to the case. The Department subsequently learned that Jason H. had been moved to North Kern State Prison in Delano, California, and reported that it had mailed Jason H.'s case plan to him there. The case worker had also left a message with Jason H.'s prison counselor, requesting that the counselor and Jason H. contact the Department about Jason's case.

The Department also submitted a "Delivered Service Log" covering the period August 2013 to February 2014. Entries on these logs indicated that Jason H. had called R.C.'s phone during a monitored visit between R.C. and the children,[3] and that Jason's paternal grandmother had informed the Department she was in regular phone contact with Jason H. and had advised Jason H. what his required classes were. The service logs also confirmed that the Department had left a voice message for Jason H.'s prison counselor requesting that he and Jason H. contact the Department about Jason's case.

The juvenile court continued the six-month review hearing to be heard with a contest by Jason H. on the issue of whether the Department had provided Jason H. with reasonable reunification services  At this hearing the Department recommended that Jason H. receive an additional six months of family reunification services. Counsel for Jason H. argued that the Department had failed to provide Jason H. with reasonable reunification services. Counsel for Jason H. asserted that the Department never contacted Jason H. after the jurisdiction and disposition hearing to determine whether he was making progress with his court-ordered case plan or whether any of the classes or programs required by the plan were available at his prison. Counsel for Jason H. pointed

---

[3]     R.C. put Jason H. on speaker phone so that Jason H. could "speak to the boys."

out that a finding that the Department had provided reasonable services could adversely impact Jason H.'s ability to retain his parental rights over Jason.

The court found that the Department had provided Jason H. reasonable reunification services, and that returning Jason to the custody of his parents would create a substantial risk of detriment to Jason's safety. The court stated that it did not have "any idea" if Jason H. was in compliance with his case plan because the court did not have "any of that information from the Department." The court continued, "At this point I don't see any reason that you should make [a] no reasonable services [finding] because for all I know he is could be [*sic*] in the programs. However, there is no information regarding that." The court found that Jason H. was not in compliance with the court-ordered case plan.

The court asked the Department to submit by April 1, 2014 a report detailing its efforts to contact Jason H., to refer him to suitable programs, and to assist him in enrolling in those programs. The court warned that if the Department did not make progress in contacting Jason H. and assisting him in enrolling in appropriate programs, the court would likely find at the next review hearing that the agency had failed to provide reasonable services. The court extended Jason H.'s reunification services for six months and set a twelve-month review hearing for August 20, 2014. Jason H. timely appealed from the juvenile court's orders at the six-month review hearing.

### B. The Second Appeal

On April 1, 2014 the Department reported that it had received a letter from Jason H. on March 6, 2014 stating that he was "aware of the programs he has to complete and is willing to participate," but that he could not enroll in the programs required by his case plan because his prison did offer them. He told the Department, however, that he was "in the process" of moving to another prison, although he did "not know which one yet." Jason H.'s prison counselor confirmed the information about Jason H. transferring to a different prison, and advised the Department that Jason H.'s release date from prison was March 2015.

5

In a status report submitted for the 12-month review hearing, the Department reported that Jason H. had been transferred to the California Rehabilitation Center in Norco, California. The Department also reported that it had received a letter from Jason H. stating that he intended to comply with his case plan and reunify with Jason and Jason's half-brother as soon as possible. The Department recommended that Jason and his half-brother remain dependents of the court and that Jason H. and R.C. receive six additional months of family reunification services.

At the 12-month review hearing, counsel for Jason H. submitted a letter from a self-help instructor at the Norco rehabilitation center, which stated that Jason H. had enrolled in a program that addressed the issues covered by his case plan. The program included classes on anger management, domestic violence, parenting, education, drug and alcohol addiction rehabilitation, and relapse prevention. As of June 30, 2014 Jason H. had participated in the anger management and educational classes, and he anticipated completing the program by December 29, 2014.

Counsel for Jason H. requested (another) contested hearing on the issue of whether the Department had provided Jason H. with reasonable reunification services. He argued that the Department had failed to make any progress in assisting Jason H. with enrolling in his court-ordered programs and classes while he was incarcerated. Counsel for Jason H. noted that the Department's reports stated only that Jason H. had been relocated to a rehabilitation center in Norco; the reports did not indicate whether the agency had contacted Jason H. or a representative at the rehabilitation center about what programs Jason H. could participate in at the new facility.

The court denied Jason H.'s request for a contested hearing, stating: "I'm not setting this for contest. What I want is I'm going to have a progress report to let me know what attempts the department has made to see what services are available to [Jason H.], and set him up for those services. And then, if nothing happens, you can request a contest. I'm not going to do it at this point." The court found that Jason H. was in partial compliance with his case plan and that the Department had provided him reasonable reunification services. The court found that returning Jason to his parents'

6

custody would create a substantial risk of detriment to his safety, but that there was a substantial probability that he would be returned to their custody in the future. The court extended Jason H.'s reunification services until the permanency review hearing (§ 366.22), which the court set for February 18, 2015. The court ordered the Department to submit a progress report detailing its efforts to help Jason H. comply with his court-ordered case plan. Jason H. timely appealed from the court's orders at the 12-month review hearing.

After Jason H. filed his notice of appeal, the court continued the 18-month review hearing to April 8, 2015. At the 18-month review hearing, the court terminated reunification services for Jason H. and R.C., ordered a permanent plan of foster placement for Jason and his half-brother, and set a section 366.26 hearing for August 5, 2015.[4]

## DISCUSSION

A. *The Juvenile Court's Orders Finding That the Department Provided Reasonable Reunification Services Are Appealable*

The Department argues that we should dismiss both appeals because the juvenile court's orders at the six-month and 12-month review hearings finding that the Department provided reasonable services are not appealable. Relying on *Melinda K. v. Superior Court* (2004) 116 Cal.App.4th 1147 (*Melinda K.*), the Department contends that Jason H. was not aggrieved by the orders and that he can only challenge the reasonable services findings by a petition for an extraordinary writ. We conclude that the orders are appealable.

---

[4] We take judicial notice of the juvenile court's February 18, March 11, March 25, and April 18, 2015 minute orders.

7

In *Melinda K.* the mother tried to appeal the juvenile court's reasonable services finding at the six-month review hearing. (*Melinda K.*, *supra*, 116 Cal.App.4th at pp. 1154-1156.) The Court of Appeal held that the mother could not appeal that finding under section 395 because the juvenile court had not taken any action adverse to the mother based on the finding. (*Id*. at pp. 1153-1154.) To the contrary, the juvenile court had found that the mother was in compliance with her case plan, praised her on her progress, extended her reunification services, and found there was a substantial probability that her child would be returned to her custody. (*Id*. at p. 1156.) Acknowledging that the finding could have a significant impact on the mother's interests in future dependency proceedings, however, the court in *Melinda K.* treated the appeal as a petition for writ of mandate and reached the merits of the mother's challenge to the reasonable services finding. (*Id*. at pp. 1156-1157.)

In *In re T.G.* (2010) 188 Cal.App.4th 687 (*T.G.*) the court disagreed with *Melinda K.* and held that an order at the six-month review hearing finding the child welfare agency had provided reasonable services was appealable. (See *id.* at pp. 693-696.) The court observed that, unlike the orders in *Melinda K.*, the juvenile court's orders at the six-month review hearing were unfavorable to the father because, even though the juvenile court continued services, the court found that the father's progress was inadequate and the court did not find there was a substantial probability of return. (*Id*. at pp. 693-694.) The court in *T.G.* therefore concluded that a parent is aggrieved by an adverse reasonable services finding at the six-month review hearing that is not supported by substantial evidence because it places the family's interests in reunification at a procedural disadvantage in future proceedings. (*Id.* at p. 695.)

This case is closer to *T.G.* than *Melinda K.* At the six-month review hearing the juvenile court found that Jason H. was not in compliance with his case plan and that returning Jason to the custody of Jason H. would create a substantial risk of detriment to Jason's physical and emotional well-being. At the 12-month review hearing, the court found that Jason H. had not fully complied with his case plan and that returning Jason to his parents' custody would create a substantial risk of detriment to his safety. The

8

inability to obtain appellate review of the reasonable services findings in these orders at this time will significantly prejudice Jason H.'s ability to reunify with, and retain his parental rights over, Jason.

As the court in *T.G.* observed, even where a reasonable services finding does not work to the immediate disadvantage of the parent because (as here) the juvenile court extends services beyond the review hearing at which the court made the finding, that finding may negatively affect the parent in subsequent proceedings. Such a finding can significantly affect the interests of parents and children in reunification by serving as a basis for future adverse orders. (*T.G.*, *supra*, 188 Cal.App.4th at pp. 693-696; cf. *Melinda K.*, *supra*, 116 Cal.App.4th at p. 1156 [precluding an appeal from a reasonable services finding may leave a parent with no means of challenging that finding, even if it forms part of the factual basis for a subsequent appealable order].) For example, a juvenile court may not terminate parental rights if "[a]t each hearing at which the court was required to consider reasonable efforts or services, the court has found that reasonable efforts were not made or that reasonable services were not offered or provided." (§ 366.26, subd. (c)(2)(A).) Indeed, even the *Melinda K.* court decided to treat the parent's appeal as a petition for writ of mandate because the reasonable services finding could have subsequent adverse consequences, and the court did not want "to leave mother without any means by which to challenge the juvenile court's [reasonable services] finding." (See *Melinda K.*, *supra*, 116 Cal.App.4th at pp. 1156-1157.)

### B. The Department Failed To Provide Jason H. with Reasonable Reunification Services

An incarcerated parent is entitled to reasonable reunification services unless the juvenile court finds that ordering services would be detrimental to the child. (§ 361.5, subd. (e)(1); *T.G.*, *supra*, 188 Cal.App.4th at p. 696.) When the juvenile court orders reunification services, the child welfare agency must tailor those services to the needs of the family and design them to alleviate the circumstances that gave rise to the court's jurisdiction finding. (*In re Taylor J.* (2014) 223 Cal.App.4th 1446, 1451 (*Taylor J.*).)

9

Even when a parent is incarcerated, "[v]isitation is a critical component, probably the most critical component, of a reunification plan." (*T.G.*, *supra*, 188 Cal.App.4th at pp. 696-697; see *Christopher D. v. Superior Court* (2012) 210 Cal.App.4th 60, 71 [agency has "responsibility to provide reunification services to incarcerated parent under § 361.5, untethered to parent's actions or statements"]; *In re Precious J.* (1996) 42 Cal.App.4th 1463, 1478 [child welfare agency must provide reasonable services, especially visitation, to incarcerated parents].) "To promote reunification, visitation must be as frequent as possible, consistent with the well-being of the child." (*Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415, 1426.)

The child welfare agency "must make a good faith effort to develop and implement a family reunification plan. [Citation.] '[T]he record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult. . . .' [Citation.]" (*Amanda H. v. Superior Court* (2008) 166 Cal.App.4th 1340, 1345; see *In re K.C.* (2012) 212 Cal.App.4th 323, 329-330.) The agency must also find and maintain contact with service providers and keep the parent informed of whether his or her progress is consistent and compliant with the court-ordered case plan. (*Taylor J.*, *supra*, 223 Cal.App.4th at p. 1452.) The agency must attempt to provide reasonable reunification services even if it is difficult to do so or the prospects of reunification are low at the time the court orders the services. (*Id.* at p. 1451; see *In re Alvin R.* (2003) 108 Cal.App.4th 962, 973 ["[s]ome effort must be made to overcome obstacles to the provision of reunification services"].) The agency's efforts to provide reunification services do not have to be perfect, but they must be reasonable given the circumstances of the case. (*T.G.*, *supra*, 188 Cal.App.4th at p. 697; see *Taylor J.*, *supra*, 223 Cal.App.4th at p. 1451.)

We review the trial court's reasonable services findings for substantial evidence. (*Amanda H. v. Superior Court*, *supra*, 166 Cal.App.4th at p. 1346; *T.G.*, *supra*, 188 Cal.App.4th at pp. 696-697.) "'The remedy for a failure to provide reasonable

10

reunification services is an order for the continued provision of services, even beyond the 18-month review hearing.' [Citation.]" (*Taylor J.*, *supra*, 223 Cal.App.4th at p. 1453.)

> 1. The Department failed to provide reasonable reunification services before the six-month review hearing

At the six-month review hearing, the juvenile court found that Jason H. was not in compliance with his case plan and that the Department had provided him reasonable reunification services after the disposition hearing. This finding is not supported by substantial evidence.

In its reports for the six-month review hearing, the Department admitted it had never spoken to Jason H. after the disposition hearing, and that Jason H. had had no contact with Jason since that hearing. The only steps the Department took to contact Jason H. were mailing his case plan to prison and making one phone call to his prison counselor a few days before the six-month review hearing. When the Department failed to receive any response from Jason H., it made no additional efforts to contact him. There is no evidence that the Department made any attempt to coordinate a single visit between Jason H. and Jason after the disposition hearing and before the six-month review hearing.

The Department acknowledges that its efforts to provide Jason H. with reunification services were "imperfect," but argues that substantial evidence supports the juvenile court's reasonable services finding because the Department arranged for Jason to visit with Jason H.'s mother and to receive services and a physical examination. Neither of these efforts, however, had any effect on or was even relevant to helping Jason H. comply with his case plan and visit with his son. The Department had a duty to make reasonable efforts to arrange for visits between Jason and his father, not his grandmother.

The Department suggests that Jason H.'s incarceration and the fact that the case worker originally assigned to Jason's case went on medical leave before the six-month review hearing excuse the agency's failure to establish a visitation schedule for Jason H. Although these circumstances may have made it more difficult for the Department, they

11

did not relieve the agency of its duty to take steps to facilitate father-son visits. (See *Taylor J.*, *supra*, 223 Cal.App.4th at p. 1451.) There is nothing in the record to indicate that the Department did not know where Jason H. was incarcerated. Yet the Department presented no evidence justifying why it made no effort to arrange for any visits between Jason H. and Jason. The Department also provided no explanation for how a change in assigned caseworkers prevented the agency from fulfilling its duty to provide Jason H. with reasonable reunification services before the six-month review hearing. Although there is evidence that the prison in which Jason H. was incarcerated did not provide programs or classes suitable to his case plan prior to the six-month review hearing, there is no evidence that Jason H. was unable or unavailable to visit with his son during that period. Substantial evidence does not support the juvenile court's finding at the six-month review hearing that the Department had provided Jason H. with reasonable services.

> 2. The Department failed to provide reasonable reunification services between the six-month and the 12-month review hearings

At the 12-month review hearing, the juvenile court found that Jason H. was in partial compliance with his case plan and that the Department had provided him reasonable reunification services. The court's reasonable services finding at this hearing is also not supported by substantial evidence because there is no evidence the Department made any effort to establish visitation between Jason H. and Jason.

By the 12-month review hearing, Jason H. had made progress with his case plan. He sent the Department a letter explaining that he had transferred to a rehabilitation center and had enrolled in a program that focused on anger management, domestic violence, and parenting issues. Nevertheless, despite Jason H.'s progress with the court-ordered programs between the six-month review hearing and the 12-month review hearing, there is no evidence Jason H. ever visited with Jason or that the Department made any effort to arrange for such visits. The Department's report for the 12-month review hearing makes no mention of any visits between Jason and Jason H. Rather, it

12

describes only visits between Jason (and his half-brother) and his mother R.C. The portion of the report titled "Services Provided/Family Compliance" does not reference any effort by the Department to help Jason H. comply with his case plan.

Citing section 361.5, subdivision (e)(1)(A)-(D), the Department argues that it satisfied its duty to make reasonable efforts to provide Jason H. with reunification services by "provid[ing] the paternal grandmother visits with Jason" and by providing Jason with medical and dental care. The Department's reliance on section 361.5, subdivision (e)(1)(A)-(D), is misplaced. That statute provides that the juvenile court must order the Department to provide reunification services to an incarcerated parent, unless to do so would be detrimental to the child, and then sets forth the types of services an incarcerated parent's case plan may include, including the provision of "[r]easonable services to extended family members or foster parents providing care for the child." In this case, the court ordered visitation between Jason and his father; the court did not order visitation between Jason and his paternal grandmother. With respect to Jason H., the Department had a duty to take reasonable steps to establish a visitation schedule for Jason H. and Jason. The Department took no such steps.

Finally, the Department argues that it was excused from remaining in contact with Jason H. and helping to establish a visitation schedule for him and Jason because Jason H. chose "a criminal lifestyle that placed him in the position of being unable to participate in meaningful reunification services." But Jason H. was incarcerated at the time the juvenile court ordered the Department to provide him reunification services. Where, as here, the juvenile court makes no finding that it would be detrimental to provide reunification services to an incarcerated parent, the Department must make reasonable efforts to help the incarcerated parent comply with his or her case plan, even if the parent's incarceration makes it more difficult for the agency to provide reunification services. (See § 361.5, subd. (e)(1); *T.G.*, *supra*, 188 Cal.App.4th at pp. 696-697.) There is no evidence that the Department made any effort to help Jason H. visit with Jason.

## DISPOSITION

The juvenile court's orders at the six-month review hearing and the 12-month review hearing finding that the Department provided Jason H. with reasonable reunification services are reversed.[5]  The case is remanded with directions to the juvenile court to enter a new order finding that, as of the six-month and 12-month review hearings, the Department did not provide Jason H. with reasonable reunification services. On remand, the juvenile court is to conduct a new hearing pursuant to section 366.21, subdivision (e), make all findings and orders specified in section 366.21, subdivision (e), for a child under three years of age on the date of initial removal, and determine whether, in light of the developments in the case during the pendency of this appeal, additional reunification services are appropriate and in the best interests of the child.



SEGAL, J.

We concur:



PERLUSS, P. J.



STROBEL, J.[*]

---

[5]    We take judicial notice of the juvenile court's April 8, 2015 order terminating reunification services, ordering a permanent plan of foster care, and setting the case for a section 366.26 hearing.  The court is directed to vacate that order.

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14