Filed 3/14/16  Emma E. v. Superior Court CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| EMMA E., | No. B269103 |
| Petitioner, | (Super. Ct. No. CK86615) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Real Party in Interest. | |

PETITION from an order of the Superior Court of Los Angeles County, Marguerite D. Downing, Judge.  Petition denied.

Charles Aghoian and Marisa Ezeolu for Petitioner.

Mary C. Wickham, County Counsel, R. Keith Davis, Acting Assistant County Counsel, and Tyson B. Nelson, Deputy County Counsel, for Real Party in Interest.

Emma E., the mother, has filed a California Rules of Court, rule 8.452 mandate petition challenging an order setting a hearing pursuant to Welfare and Institutions Code[1] section 366.26. The juvenile court expressly stated that the permanent plan to be considered was a guardianship arrangement not adoption. The mother raises two issues in her writ petition. First, she argues the there was an insufficient showing of substantial detriment. Second, she argues insufficient reunification services were provided.

First, the juvenile court found there was a substantial risk of detriment to the well-being of the child, Christopher R., if he were returned to the mother's custody. (§ 366.25, subd. (a)(1), (3); *Constance K. v. Superior Court* (1998) 61 Cal.App.4th 689, 704-705.) The mother challenges this finding. We review the juvenile court's substantial detriment findings for substantial evidence. (*Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 763; *In re Shaundra L.* (1995) 33 Cal.App.4th 303, 316.)

Substantial evidence supports the juvenile court's substantial detriment finding. The child was removed from the mother's custody because of her involuntary hospitalization due to her failure to take her psychotropic medication. In the past, the mother had displayed a history of self-mutilation, suicidal and homicidal ideation. The mother was diagnosed with a major depressive disorder with psychosis and post-traumatic stress syndrome. During the reunification period, the mother was prescribed antipsychotic drugs. At the time of the hearing where the substantial detriment finding was returned, the mother had just enrolled in mental health services. Further, the mother had, in the past, threatened to kill the child and herself. The mother's psychologist, Dr. Maher M. Selim, wrote, "Needles[s] to say, that this patient needs long-term psychotherapy."

Additionally, there was evidence the child became upset while with the mother. For example, on June 11, 2015, while they were riding together on their bicycles to the grocery store, the child became angry. The child then began peddling faster and rode into the street. The child explained what happened: "I rode onto the street and got in

---

[1]     Future statutory references are to the Welfare and Institutions Code.

2

trouble[.]  I didn't hit her, I was scared.  She wanted to kill me.  I feel mad at my mom's house and I feel I want to be dead and I want to stay here."  A social worker's report details the child's anger about visiting with the mother:  "[Children's social worker Elizabeth] Tep asked [the child] if it would make him feel better if he drew how he was feeling.  [The child] drew a 'mad man' and wrote 'I feel MAD when it is Friday.'  [Ms.] Tep asked why and he replied 'because I go with my mom on Fridays."  In addition, there was evidence that the mother allowed an individual who had not undergone a criminal background check to care for the child.

By contrast, the foster parent, Francisco F., was providing excellent care for the child.  According to a department progress report prepared by Ms. Tep, "The child . . . continues to do well in the home of the caregiver, Francisco [F.  Francisco] continues to provide [the child] with all of his basic needs such as medical, dental, and mental health services.  [The child] stated he loves living with [Francisco] and that he is lovable. [Francisco's] home continues to be neat and clean[.]  [Francisco] has stated he would like to have [the child] continue to live with him in his home and hopes to adopt [the child]."

The child, according to a department report, described his reactions to the two living arrangements:  "[The child] has continued to verbalize his discontentment at [the mother's] home by saying 'I feel mad at my mom's house and I feel like I want to be dead and I want to stay here.'  [The mother] has also stated [the child] told her 'I want to live with [Francisco].  Why don't you let me live with [Francisco]?  [Francisco]'s house is bigger and I am happy with [Francisco].'  During [the child]'s weeklong visit with [the mother] [the child] told [Ms.] Tep 'I dream about Frank because I miss him.'"  Further, as the hearing approached, the child began to display anxiety and suicidal thoughts. Joanne Newfield, the Licensed Marriage and Family Therapist counseling the child wrote, "Per [Francisco's] report, [the child] continues to be anxious and becomes dysregulated prior to and returning from weekend visits with [the] biological mother, has thoughts of wanting to hurt himself, continues to have difficulty listening to directives, continues to have low self-esteem and blames himself when things go wrong, continues to have anger issues, and still is very sensitive."

The child testified in the juvenile court. The child expressed a desire to live with the foster father, Francisco. The child testified he felt sad when he visited with the mother on Fridays. Further, the child did not want to see the mother because, "I do not know if she cares about me." When visits with the mother concluded, the child testified he felt "kind of sad, but happy." The child was asked why he felt happy and he responded, "[B]ecause Frank, he is, like, a dad that takes care of me and takes me to school to make me smart." The child expressed a desire to be adopted by the foster father.

The foregoing constitutes substantial evidence that return of the child to the mother's custody would be detrimental to him. The mother, who at the time of the permanency plan hearing had only recently begun undergoing therapy, had previously threatened to kill the child. The mother has an extensive record of serious mental illness which threatens not only the child's physical and emotional well-being but his life. And, according to Dr. Selim, the mother will require extensive future psychiatric care. And there is no guarantee she will be sufficiently disciplined to cooperate in that effort. Further, the foster father provided clearly superior care to the child. Thus, sufficient evidence supports the juvenile court's substantial detriment finding. Nothing in this opinion should constitute a statement of views that guardianship, as distinguished from adoption, is the correct ultimate disposition.

Second, the mother challenges the provision of reunification services. We review the mother's contention for substantial evidence. (*Melinda K. v. Superior Court* (2004) 116 Cal.App.4th 1147, 1158; see *In re Taylor J.* (2014) 223 Cal.App.4th 1446, 1448.) At the time of the December 8, 2015 hearing, the mother had been receiving mental health services for one year. Further, the mother was provided with regular visitation with the child. The child received counseling services from the commencement of the reunification period. At the time of the hearing to determine whether to return the child, he was receiving therapy from Ms. Newfield.

A recommendation was received from the county mental health department and Ms. Newfield to provide family or co-joint counseling between the mother and the child.

4

The mother argues the failure to provide the family counseling requires the mandate petition be granted. This argument is meritless. The department social worker, Ms. Tep, conscientiously repeatedly tried to arrange for family counseling only to be frustrated by the mother's excuses and alleged unavailability. At one point, the mother indicated she would only be able to participate in such counseling once the child was returned to her custody. The mother believed family counseling as recommended by Ms. Newfield was not a good idea. The mother vaguely claimed that instituting such counseling as proposed by Ms. Tep was some form of inappropriate "double dipping." Ms. Tep eventually arranged for family counseling. However, the mother indicated she could not appear as scheduled because of unspecified work requirements. Simply stated, the mother refused to cooperate in the provision of family counseling. The mother's intransigence is thoroughly documented in the December 8, 2015 progress report prepared by Ms. Tep. There is no merit to the argument inadequate reunification services were provided.

The mandate petition is denied.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

TURNER, P. J.

We concur:

KRIEGLER, J.          KUMAR, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.