Filed 2/11/21  N.L. v. Superior Court CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| N.L.,<br><br>　　　Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF RIVERSIDE COUNTY,<br><br>　　　Respondent;<br><br>RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,<br><br>　　　Real Party in Interest. | E076108<br><br>(Super.Ct.No. INJ1800331)<br><br>OPINION |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Susanne S. Cho, Judge.  Petition denied.

Shannon M. Goldstein for Petitioner.

No appearance for Respondent.

Gregory P. Priamos, County Counsel, James E. Brown, Anna M. Marchand and Prabhath D. Shettigar, Deputy County Counsel, for Real Party in Interest.

1

N.L. (mother) petitions for extraordinary relief pursuant to rule 8.452 of California Rules of Court for an order of this court (i) setting aside the juvenile court's order setting a Welfare and Institutions Code[1] section 366.26 permanent plan selection hearing as to one of her three children, H.D. (the child), and (ii) instructing the court to provide her additional family reunification services. She contends the reasonable services finding made nearly 25 months after the child was taken into custody was not supported by sufficient evidence because the Riverside County Department of Public Social Services (the Department) did not make timely good faith efforts to provide conjoint therapy sessions ordered at the 12-month review hearing. She posits that the delay was the sole cause of her inability to be reunified with the child. We deny the petition.

## BACKGROUND

In September 2018, the child (born in October 2011) was living with her parents, her twin brother, and two-year-old sister when the Department received a referral concerning the family.

Investigation revealed a number of issues in the home including, parents suffering from mental health issues, extensive ongoing verbal and physical domestic violence between the parents in the children's presence, and neglect of the children. In addition, the father's condition of Chronic Traumatic Encephalopathy contributed to his mental health issues, which were sufficiently severe to require section 5150 holds. The child did not feel safe at home when the father was present. On October 25, 2018, the Department

---

[1] All statutory references herein are to the Welfare and Institutions Code unless otherwise noted.

2

filed a section 300 juvenile dependency petition on behalf of the three children. The children were detained the following day.

At the January 2019 combined contested hearings on jurisdiction and disposition, the juvenile court found the children came within subdivision (b)(1) of section 300 and adjudged them dependents of the court. It ordered the children's removal from home and provision of family reunification services. Services were to include mother's participation in individual counseling and an assessment of the child to determine if she needed mental health services.

The child's mental health screening resulted in twice-a-week counseling sessions to address her crying spells, anxiety, and self-induced vomiting that she had learned from her mother as a measure to avoid weight gain. She was enrolled in counseling with a family therapist and clinical counselor.

Progress by the July 2019 six-month review of services

In its June 2019 report prepared in anticipation of the July six-month review hearing, the Department noted mother was regularly attending monthly sessions with her psychiatrist, who reported that she was stable on medication and was following up with therapeutic suggestions. She had started individual therapy in January 2019 but was discharged at the end of May because she had attended only two sessions. In June, the social worker referred mother to another counselor, and the worker added family counseling sessions to mother's service plan at her request. Mother and child had continued to participate in supervised visits, which the child enjoyed.

The father requested a contested hearing, which went forward on August 5, 2019. The court found reasonable services had been provided and ordered them to be continued.

Developments pending the November 2019 contested 12-month review

The family's situation had deteriorated by the time of the October 2019 report for the 12-month review hearing. Mother had stopped visiting the children consistently. Between June 5 and September 23, she had canceled seven out of 15 scheduled visits and attended another visit with the father. The child was attending her therapy sessions regularly, but her behavior had taken a turn for the worse. She was inducing vomiting at school instead of at home and had lost three pounds. She was expressing anger, becoming defiant, and lying excessively. In September, the child's counseling was expanded to include fuller wraparound services.

In August, mother had once again been discharged from individual counseling because of her failure to attend sessions. She did not enroll in any other counseling program. That month she told the social worker she was going to move and asked for referrals in the Riverside area but did not provide a new address. In September, she indicated she would be moving to Indio and again requested referrals but did not provide an address.

Throughout September, mother often did not make herself available on the phone or in person to discuss her progress with the social worker and canceled scheduled meetings. She blamed her lack of participation in services on transportation difficulties. She declined the worker's offer to have bus passes mailed to her and failed to follow through on alternate arrangements made to get the passes into mother's hands. In late

4

September, the worker eventually found mother with father in front of a boarding home and gave them bus passes for San Bernardino and Riverside Counties.

The worker recommended termination of reunification services based upon both parents' lack of progress in services. In October, the matter was set for a contested hearing at mother's request. The court put mother on notice that it was inclined to follow the Department's recommendation "if things do not look better by the next hearing."

At the November 12, 2019 contested hearing, the juvenile court found the Department had made reasonable efforts and provided reasonable services. It terminated services as to the father, who had not regularly participated in services since the beginning of the dependency proceedings. It continued services as to mother, who had by then started to engage in reunification efforts and had made adequate progress. The court ordered the Department to provide a referral to the family for conjoint therapy and supervised visits to take place a minimum of twice a month and, so long as mother was living at a mission in Coachella, the Department was to provide transportation because travel by bus would take an unreasonable amount of time. The 18-month review hearing was set for April 2020.

Six days after the hearing, letters evidencing mother's recent progress were filed with the court. She had resumed individual counseling in October, she was participating in behavioral health counseling, she was living at the Coachella Valley Rescue Mission Emergency Shelter program as of October 4, and she would be accepted into that Mission's long-term recovery program upon a bed becoming available.

<u>The developments pending the November 2020 18-month review hearing</u>

Shortly after the November 12, 2019, 12-month review hearing, the mother was permitted to have the children with her for an unsupervised Thanksgiving visit. At the end of the visit, the maternal aunt refused to transfer the children back to their caregiver and instead took them to mother at the Coachella Valley Mission. All three children refused to visit mother for the next two weeks.

At the child's next encounter with mother, which took place on December 11, 2019 at the Department's Banning office, the child became physically aggressive toward mother, then hid under the table, screaming and crying until the social worker took her out of the room. Because of her reaction and objection to attending visits, the child did not attend for the following two weeks. When her visits resumed, she would not get out of the car to go into the Department's offices, a refusal that persisted until in-person visits were suspended in mid-March 2020 due to the COVID-19 pandemic.

Conjoint therapy sessions had been scheduled to begin on February 10, 2020. Just hours before the first appointment, mother canceled it. She did not show up for the next session the following week. That session went forward with the child, who became upset when the topic of mother was raised. She screamed that she did not want to have sessions with mother or her twin brother.

In the meantime, the child's twin brother was having problems. On January 29, he bit a teacher's aide and, two days later, he was suspended from school on account of defiant and disruptive behavior. After mother canceled a visit with the children on February 13, he ran away from the caregiver's home and was returned by the police later

6

that evening. Over the next several days, he became increasingly aggressive and, on February 18, the caregiver gave the Department a 14-day notice requesting his removal.

On February 24, a meeting was held in response to the twin's behavior. Both parents and the children were present. The father snapped at the child after she confronted him about his behavior and the children were removed from the meeting. Mother said she could not attend family therapy sessions and wanted video conferencing, which was not an option under the contract the provider had with the County.

The day after the family session, the twin became violent at school, injuring several staff members and was taken to the emergency room by police. With no other options available that would help the boy, the Department placed him with mother the next day.

Mother had issues setting up video calls following the suspension of in-person visits in March due to the pandemic. Online visits got underway on April 20, 2020, allowing the child an opportunity to see and speak with her twin and mother. In early May, during the third video visit, the child saw the father sitting in mother's living room and wanted to know what he was doing there. Mother told the child she was confused, that what she had seen was a picture of the father, but the child was adamant that he was present during the call. On the same day, the social worker reported seeing father leaving the home, and the twin later confirmed that the father was present during the call but left after the child saw him.

Shortly after that incident, the child told her therapist she was not comfortable with conjoint therapy, and it would not work because her mother lies. The therapist

7

recommended against going forward with those sessions because of the potential for damaging the child's progress in overcoming self-harming behaviors. In response, nine days later, the social worker submitted a new referral for conjoint sessions with another therapist. Due to bureaucratic difficulties, a therapist was not lined up until mid-July and would be providing telephonic, joint sessions. Mother expressed dissatisfaction with that arrangement and said her own therapist was the only one acceptable to her because that was the only professional she trusted.

In August 2020, at the behest of the court, the social worker submitted a new referral for conjoint therapy. Mother completed her first session with the new therapist on August 31, but missed the next three due to what she described as miscommunications concerning appointment times. During that same period, she also missed three video visits with the children. She said she had internet problems as to the first of those visits, she offered no explanation for missing the second one, and slept through the third. When visits did occur, the child refused to join in conversations with mother.

In late October, the new therapist reported a lack of progress in the four conjoint sessions that had by then taken place. The child was becoming increasingly aggressive and rude when speaking to mother and would become even more upset when the therapist attempted to intervene and encourage the child to be respectful. The child terminated the two most recent sessions only a few minutes after they had started.

The 18-month review hearing took place on November 5, 2020, over two years after the children had been taken from the physical custody of their parents. The child, by then nine years old, was doing well in school and was no longer in need of an

8

individualized education plan program. She had made significant progress in therapy, had learned how to use coping skills, had not engaged in self-injurious behaviors since April 2020, and had "graduated" from wraparound services in August. She was afraid to be placed back home and wanted to remain with the caregiver.

Mother had been able to focus on the twin and parent him, but the task took all of her time and energy. He required constant supervision, he had tried to run away several times, and there had been times when law enforcement or the wraparound team were called in to assist mother in dealing with his behavior.

At the hearing, the youngest of the children, by then four years old, was returned to mother with family maintenance services. With respect to the child, the court found the Department provided reasonable services and mother made adequate progress, but return home would pose a substantial risk of emotional and physical detriment to the child. It terminated family reunification services and set the child's case for a section 366.26 permanent plan selection hearing.

Mother filed a writ petition challenging the juvenile court's reasonable services finding. We issued an order to the Department to show cause and it has filed a responsive brief in which it argues the juvenile court's findings were properly made.

## DISCUSSION

Mother argues the court should have extended the reunification period for her and the child at the 18-month review hearing because the Department had not provided family counseling and conjoint therapy in a timely manner. We disagree. As we explain *post*, the juvenile court was not authorized to extend services at the 18-month review

9

hearing in the circumstances before it and, in all events, there is ample evidence to support the conclusion that the Department had provided reasonable therapeutic services.

### 1. *The services requirement and the limits on reunification efforts*

Section 361.5 provides in relevant part that, whenever a minor is removed from the parent, the juvenile court is required to order family reunification services reasonably tailored to address the problems that led to the child's removal. (§ 361.5, subd. (a); *In re Taylor J.* (2014) 223 Cal.App.4th 1446, 1451.) The child services agency must make a good faith effort to address the parent's issues and to make reasonable efforts to assist a parent who is struggling with compliance. (*Katie V. v. Superior Court* (2005) 130 Cal.App.4th 586, 598 (*Katie V.*).) It has long been recognized that, in most cases, more services could have been provided and the services provided are often imperfect. (*Elijah R. v. Superior* Court (1998) 66 Cal.App.4th 965, 971, citing *In re Misako R.* (1991) 2 Cal.App.4th 538, 547.) The standard is whether they were reasonable in the circumstances. (*Misako R.*, at p. 547.)

There are time limits on the provision of services. As a general rule, if the child is under age three when initially removed from the parent's physical custody, services shall be provided for six, but not longer than 12, months. (§ 361.5, subd. (a)(1)(B).) If the child was three years of age or older at the time of removal, services are to be provided for 12 months. (§ 361.5, subd. (a)(1)(A).) If a sibling group has a member who was under the age of three when taken into custody, services may be limited to six months. (§ 361.5, subd. (a)(1)(c).)

The time for services runs from the dispositional hearing and ends either six or 12 months after the date the child entered foster care (that is, the earlier of the date of the jurisdictional hearing or the date that is 60 days after the date on which the child was physically removed from the parent's physical custody by a social worker or peace officer). (§§ 361.5, subd. (a)(1)(A) & (B), 361.49; *In re Christina A.* (2001) 91 Cal.App.4th 1153, 1163-1165.)

If the child cannot be safely returned to the parent's physical custody within the specified time limits, services may be extended at the six-month and 12-month review hearings to a maximum time not to exceed 18 months in two circumstances: (1) the court finds there is a substantial probability the child will be returned to the parent's physical custody within the extended period of time, or (2) it is unable to find by clear and convincing evidence that the parent was offered reasonable reunification services, a finding required to be made before the court may set a section 366.26 permanent plan selection hearing. (§§ 361.5, subd. (a)(3)(A), 366.21, subd. (g)(1)(C)(ii).)

At the 18-month review hearing, the court is required to return the child to the parent unless it finds by a preponderance of evidence that return would create a substantial risk to the child's safety, protection, or physical or emotional well-being. (§ 366.22, subd. (a)(1).) The court must also determine whether a preponderance of evidence establishes receipt by the parent of reasonable services. (§ 366.22, subd. (a)(3); *Katie V.*, *supra*, 130 Cal.App.4th at pp. 594-598.)

Although the court must make a finding as to whether reasonable services had been provided, its authority to set the matter for a permanent plan selection hearing is not

conditioned on a reasonable services finding.  (§ 366.22, subd. (a)(3); *N.M. v. Superior Court* (2016) 5 Cal.App.5th 796, 805-806 (*N.M.*).)  That is, if the child cannot be returned home, the court is required to set the matter for the selection hearing whether or not the court finds reasonable services have been provided unless the parent comes within one of two exceptional circumstances that provide the court authority to extend services beyond the 18-month review.

One exceptional circumstance is the parent comes within subdivision (b) of section 366.22.  That provision authorizes the court to continue services up to but not beyond the 24-month anniversary of the date the child was first taken into protective custody if it finds by clear and convincing evidence that to do so would be in the child's best interests and if the parent comes within one of the following descriptions:  (i) the parent is making significant and consistent progress in a court-ordered residential substance abuse treatment program, (ii) the parent was either a minor parent or a nonminor dependent parent at the time of the initial hearing and is making significant and consistent progress in establishing a safe home for the child's return, or (iii) the parent was recently discharged from incarceration, institutionalization, or the custody of the United States Department of Homeland Security and is making significant and consistent progress in establishing a safe home for the child's return.  (§ 366.22, subd. (b).)

The other exceptional circumstance that would allow the court to extend services at the 18-month review is if the juvenile court finds the parent was never provided reasonable services during the presumptive statutory minimum period for services (six

months for children under age three or 12 months for children ages three and up). (§ 361.5, subd. (a)(4)(A); *In re M.F.* (2019) 32 Cal.App.5th 1, 12, 20-21 (*M.F.*).)

2. *In the circumstances presented here, the court was required to set the permanent plan selection hearing at the 18-month review hearing*

In the course of the 18-month hearing in this case, the court found return to mother would create a substantial risk of detriment to the emotional and physical well-being of the child, a finding that mother does not challenge. The court was, therefore, required to terminate services and set the permanent plan selection hearing even if it found fault with the Department's provision of services unless mother came within one of the exceptional circumstances permitting reunification efforts to be extended. (§ 366.22, subd. (a)(3); *N.M.*, *supra*, 5 Cal.App.5th at pp. 805-806, 808; *M.F.*, *supra*, 32 Cal.App.5th at pp. 1, 12, 20-21.)

The authorization for extending services provided for in subdivision (b) of section 366.22 did not apply to mother. She was not in a court-ordered residential substance abuse treatment program; she was not a minor or non-minor dependent parent at the time of the initial hearing; and she had not been recently discharged from incarceration, institutionalization, or the custody Homeland Security. (§ 366.22, subd. (b).)

Mother appears to suggest that the second exceptional circumstance applied in her case because the Department should have provided counseling and conjoint therapy sessions, but it never did so. She has forfeited that argument by failing to challenge by a timely appeal the juvenile court's findings made at six- and 12-month review hearing that

13

the Department had provided reasonable services.  (§ 395; *In re A.K.* (2017) 12 Cal.App.5th 492, 500-501.)

We note that, even if mother had not forfeited her right to contest the reasonable services findings made at the six- and 12-month review hearings, the record does not support mother's claim she was never provided reasonable therapeutic services designed to assist her in reunifying with the child.  The Department promptly arranged for mental health services to be provided to mother following the January 2019 hearing on disposition, but she was discharged in May because she only attended twice.  A new therapist was arranged for in June, but in August, the mother was discharged due to her lack of attendance.  Thereafter, in spite of efforts by the Department to get referrals to mother and help her with transportation, mother did not undertake participation in therapeutic services until the month before the November 2019 contested hearing on the 12-month review.

After the 12-month review, conjoint therapy sessions were set to begin in February 2020, but mother canceled the first appointment just hours before the session.  The following week, she failed to show up.  When family counseling was offered later in February, mother said she would not be able to attend.  When the Department enlisted a

new therapist to begin in August 2020, mother completed her first session but failed to show up for the next three.

## DISPOSITION

The petition for extraordinary writ and the request for stay are denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


RAMIREZ
P. J.


We concur:


SLOUGH
J.


RAPHAEL
J.