Filed 10/14/21  S.A. v. Superior Court CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| S.A. et al., | B314095 |
| Petitioners, | Los Angeles County Super. Ct. No. 19CCJP07390A |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ to review order of the Superior Court of Los Angeles County, Marguerite D. Downing, Judge.  Petition granted.

Los Angeles Dependency Lawyers, Inc. (Law Office of Emily Berger), Dominika Campbell and Xinyi Zhang for Petitioner.

Children's Law Center and Michael Ono for Minor.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Stephanie Jo Reagan, Principal Deputy County Counsel, for Real Party in Interest.

———————

Father petitions this court for extraordinary relief (Welf. & Inst. Code, § 366.26, subd. (*l*);[1] Cal. Rules of Court, rule 8.452) from the juvenile court's order terminating family reunification services and setting a permanency planning hearing under section 366.26 for his son J.A. (now age 16). Father contends substantial evidence did not support the juvenile court's finding that the Los Angeles County Department of Children and Family Services (Department) provided him with reasonable reunification services. J.A. joins in father's petition. We grant the petition.

## BACKGROUND

Father and the Department have set out the complete history of the juvenile court proceedings in their briefs. A detailed summary of the factual background and proceedings through the disposition hearing also appears in our unpublished opinion affirming the juvenile court's dispositional order.[2] We repeat that history only when necessary to address the specific claims for extraordinary relief.

———————

[1] Statutory references are to the Welfare and Institutions Code.

[2] See *In re J.A.* (Nov. 10, 2020, B304452) [nonpub. opn.].

In September 2019, father allowed mother access to his and J.A.'s home—in violation of an earlier juvenile court custody order requiring mother's visits with J.A. be monitored.[3] Mother threatened to break things with a sledgehammer in front of J.A. and to burn the house down. After the incident, father obtained a temporary restraining order against mother to protect J.A., but he failed to serve mother with the order.[4] On November 15, 2019, the Department filed a section 300 petition on J.A.'s behalf, and the juvenile court detained him from parents.

In December 2019, the Department began to suspect father might have an issue with drugs or alcohol. The juvenile court continued the originally scheduled December 12, 2019 adjudication hearing to January 7, 2020 to allow the Department to report on father's drug test results and "compliance."

On December 27, 2019, a social worker met with father and gave him a list of referrals for services, including individual therapy, parenting classes, drug and alcohol counseling, and domestic violence counseling. Father signed a receipt confirming

---

[3] In 2012, a juvenile court in Riverside County declared J.A. a dependent child, finding father had a history of engaging in domestic violence, mother had a history of substance abuse, and both parents failed to protect J.A. from the risk of harm posed by this endangering conduct. The case was transferred to Los Angeles County, and the juvenile court terminated jurisdiction with a custody order granting father sole custody.

[4] In December 2019, father obtained another temporary restraining order. He personally served it on mother along with his request for a permanent restraining order to be heard on December 30, 2019. That hearing was continued to January 21, 2020 when mother did not appear.

he received the list of referrals. In early January 2020, father told the social worker he was scheduled to begin parenting classes later that month and he was attempting to enroll in individual counseling.

On January 7, 2020, the juvenile court partially sustained the petition and adjudicated J.A. a dependent, finding that, among other things, father violated the juvenile court custody order and failed to protect J.A. by allowing mother to have unsupervised access to the child. The court held a separate disposition hearing as to father on January 29, 2020, to allow him to drug test. He tested positive for marijuana on January 16 and 23, 2020. The juvenile court ordered J.A. removed from father, ordered the Department to provide family reunification services to father—including referrals for services—and ordered father to enroll in drug testing (and a substance abuse program if any tests were missed or dirty), parenting classes, and individual counseling. Father appealed from the disposition order and we affirmed.

The six-month review hearing was not held until December 3, 2020, due both to the COVID-19 pandemic state of emergency and the Department's failure to provide proper notice of the continued hearings to parents. The Department's six-month status review report and September 17, 2020 last minute information for the court (LMI) stated father had not provided proof of enrollment in any court-ordered programs and had tested positive for methamphetamine, amphetamine, and marijuana on March 16 and April 2, 2020. The Department's December 2, 2020 LMI noted father tested positive for those same drugs again on November 18, 2020.

4

Father's counsel presented a November 20, 2020 letter verifying father had enrolled in an outpatient drug and alcohol program on November 18, 2020, and the Department's delivered service log of "[a]ll [c]ontacts, [s]ervices & [v]isits"—referred to as Title XXs—from December 1, 2019 to November 4, 2020. The Title XXs showed the social worker met with father in-person on December 27, 2019 (before the adjudication hearing) to give him a packet of DCFS-approved service providers; possibly met with and then spoke to father on the phone about J.A.'s placement in early March 2020; and texted father in May about proof of his participation in court-ordered services, and again in November, about certificates of completion for those services. The Title XXs noted that, on October 22, 2020, father sent the social worker via text a certificate of completion for a four-hour parenting course. In that same text, father said he had provided information about his participation in counseling before the COVID-19 pandemic, and—despite his positive drug tests—denied taking "any illegal drugs." He believed either his "ex-spouse" had drugged him, or his medication had caused false positives.

At the hearing, the juvenile court found parents' progress in their case plans "toward alleviating or mitigating the causes necessitating placement" had "not been substantial." But, the court also found the Department had not provided, offered, or made reasonable and/or active efforts to provide or offer reasonable reunification services. It continued parents' reunification services "for the reasons [it had] stated on the record" at the hearing. (The reporter's transcript of that hearing is not part of the appellate record.)

5

In LMIs submitted before a March 3, 2021 progress hearing, the Department again reported father had not provided it with proof of any court-ordered services and had not drug-tested.[5] A social worker had tried to contact father's case manager at his drug treatment program in December, January, and February, without success.

The 12-month review hearing was scheduled for May 27, 2021. The Department detailed the family's progress in its May 11, 2021 status review report. Father had not been drug testing: he was a no show for a February test and his four tests in March. The report stated father tested positive for marijuana, methamphetamine, and amphetamine on five occasions—presumably referring to his earlier-reported tests in 2020. The report also stated the social worker provided father with referrals to services on April 1, 2021, but did not attach a signed confirmation from father.[6] And, the Department reported it had contacted father in March, April, and May to ask him for certificates of completion of his court-ordered services, but father had not provided completion certificates for, or proof of participation in, those services. The court continued the matter to July 14, 2021 for a contested hearing on the issue of reasonable

---

[5] Since the December 3, 2020 review hearing, father had missed four scheduled tests in December 2020 and seven between January 5 and February 16, 2021. The Department also attached a list of father's no-show and positive drug tests from the previous review period (January 2020 through November 30, 2020).

[6] The Title XXs produced after the Department filed its report do not include an entry showing the social worker contacted father on April 1, 2021.

6

services and for the Department to provide Title XXs for counsel's review.

In its June 29, 2021 LMI, the Department again stated father had tested positive for drugs on five undated occasions. The Department also reported father had provided proof of participation in individual counseling and the completion of a four-hour parenting class, but noted the class was not court approved. The Department went on to state father had neither consistently drug tested nor enrolled in a full substance abuse program, as the court required.

The Department's Title XXs from January 1, 2021 to June 21, 2021, showed the social worker tried to contact father by phone and/or text several times—on January 4, February 1, March 4, April 7, and June 10, 2021—about getting certificates for his court-ordered services, but father did not respond. On March 2, 2021, the social worker successfully texted father. He said he had been "battling COVID" and unable to attend his sessions, so he had no certificates. Father also contacted the social worker by text on April 20, 2021, to get her email address so he could send the information she had requested. Father again texted the social worker on June 2, 2021, to ask her for the drug testing site's phone number. The next day, the social worker texted the phone number to father and asked him if he had any certificates of completion. Father did not respond to the social worker's text and did not answer the phone when she called.

The July 14, 2021 review hearing was continued to July 27, due to counsel's illness. Father was not present. J.A.'s counsel, joining father's counsel, asked the court to extend family reunification services. J.A.'s counsel argued the Title XXs

7

showed the social worker reached out to father only "a handful of times to ask him where his certificates" were. Counsel noted the Title XXs showed no efforts to give father new information or referrals to help him. Counsel also noted the discrepancy between the Department's report—that stated father had not enrolled in a parenting class or participated in counseling—and its LMI—that stated father had provided proof of participation in individual counseling and completion of a four-hour parenting class. Counsel argued the social worker did "not seem to have the clearest idea of what is happening in this case, which, given what appears to be fairly minimal involvement with the parents, is not especially surprising."

Counsel further argued the social worker's texts asking for certificates and providing father with the drug testing site's phone number did not demonstrate the social worker helped father access his programs. Noting father had consistently visited J.A., despite battling COVID-19, counsel asserted she believed J.A. could be returned to father if he "actually receiv[ed] adequate support from the Department to access the services he's been ordered to participate in." Counsel noted the court's earlier admonishment about the Department having not provided reasonable services "did not really have an [e]ffect. I just don't see a significant increase or change in effort to assist this family with reunification."

Mother's counsel also argued the Department did not make reasonable efforts. Among other things, counsel challenged the veracity of the social worker's report. Father's counsel joined and adopted J.A.'s and mother's arguments. He also argued the social worker's reporting lacked credibility, noting it reported father had no visits with J.A. when J.A. had confirmed through

8

his counsel that the visits had taken place. (The court found it "appear[ed]" father had visited J.A. "consistently and regularly.") Father's counsel asked the court to make a no reasonable services finding and extend family reunification services.

Counsel for the Department argued parents were not testifying before the court that they did not receive the social worker's messages or did not receive referrals. Counsel argued the social worker was at least attempting to contact parents, but they did not "seem to begin to engage, at all, with the court ordered services." Counsel asked the court to terminate reunification services, as the case was past the 18-month statutory cut-off date.

The court found the Department made reasonable efforts. The court noted the social worker called parents once a month with no response. The court remarked that father had tested dirty, but "never got into a program," and "[t]hen he did a four[-] hour [parenting] program, but he was told by the social worker that it [was] not approved. So he has not done a program. As to individual counseling, he has not done individual counseling. So the court finds that the father is not in compliance."

The court stated, "after so many calls to a parent, they do not call them back, I don't really know what is expected of the social worker." The court admonished counsel, "If you[ ] belie[ve] what she is saying in the Title XX's is untrue, you needed to bring proof that it's not, or bring the social worker in." The court noted parents had received 20 months of services, but acknowledged the earlier services had not been reasonable. The court noted there was not a substantial probability that J.A. could be returned to parents by the 18-month date, which had passed. The court concluded parents had "made no progress in

resolving the issues that led to the removal of [J.A.] nor [had] they demonstrated the capacity and the ability to complete the objectives of treatment and to provide for [J.A.'s] safety, protection, physical and emotional well being." The court found the Department had offered or provided reasonable reunification services to parents, terminated reunification services, and set a section 366.26 permanency planning hearing for November 18, 2021.

Father timely filed a notice of intent to file a writ petition, and then filed this petition for extraordinary writ and a request for stay.[7] On September 2, 2021, we issued an order to show cause why father's petition should not be granted, but did not stay the proceedings. J.A. joined in father's petition. The parties waived oral argument.

## DISCUSSION

Father contends substantial evidence did not support the juvenile court's finding of reasonable services because the Department did not present evidence it contacted his service providers to confirm he had completed the parenting program or had enrolled in individual counseling, or told father the parenting program he completed was unsatisfactory. J.A. joins in father's arguments and also contends the Department did not make reasonable efforts to help father comply with his case plan when

---

[7]     Mother also filed a notice of intent to file a writ petition. Her appellate counsel subsequently filed a letter brief under *Glen C. v. Superior Court* (2000) 78 Cal.App.4th 570. We granted mother an extension of time to file a writ petition in pro. per.— she did not.

10

it only gave father referrals and did not help him find programs that would allow him to participate while he had COVID-19.

**1.** *Applicable law and standard of review*

"In a juvenile dependency proceeding, a parent generally has a statutory right to reunification services when his or her child is removed from the parent's custody at a disposition hearing." (*In re M.S.* (2019) 41 Cal.App.5th 568, 590; see § 361.5, subd. (a).) Reunification services are among the "[s]ignificant safeguards" that are built into the current dependency scheme. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 307–308; accord, *In re M.F.* (2019) 32 Cal.App.5th 1, 13 (*M.F.*) ["Family reunification services play a critical role in dependency proceedings."].) As a result, the Department must make a " ' " 'good faith effort' " ' to provide reasonable services responsive to the unique needs of each family through a plan that is ' "specifically tailored to fit the circumstances of each family . . ., and . . . designed to eliminate those conditions which led to the juvenile court's jurisdictional finding." ' " (*In re Taylor J.* (2014) 223 Cal.App.4th 1446, 1451 (*Taylor J.*).)

Under section 366.21, subdivision (f), at the 12-month review hearing, the juvenile court must "determine whether reasonable services that were designed to aid the parent . . . to overcome the problems that led to the initial removal and continued custody of the child have been provided or offered to the parent . . . ." (§ 366.21, subd. (f)(1)(A).) The court may not set a section 366.26 hearing unless the Department proves by clear and convincing evidence that it has provided or offered reasonable services to the parent. (§ 366.21, subd. (g)(1)(C)(ii); *Amanda H. v. Superior Court* (2008) 166 Cal.App.4th 1340, 1345 (*Amanda H.*).)

11

The adequacy of the plan and the reasonableness of the Department's efforts are judged according to the circumstances of the specific case. (*Taylor J., supra*, 223 Cal.App.4th at p. 1451.) In other words, a parent's "difficulty meeting the case plan's requirements does not excuse the [Department] from continuing its effort[s] to bring [the parent] into compliance with the court's orders." (*Ibid.*) Accordingly, to support a finding that the Department provided or offered reasonable services to the parent, the record should demonstrate the Department "identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained *reasonable* contact with the parents during the course of the service plan, and made *reasonable* efforts to assist the parents in areas where compliance proved difficult." (*In re Riva M.* (1991) 235 Cal.App.3d 403, 414.) "In almost all cases it will be true that more services could have been provided more frequently and that the services provided were imperfect. The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances." (*In re Misako R.* (1991) 2 Cal.App.4th 538, 547.)

We review the juvenile court's finding that the Department provided reasonable services for substantial evidence. (*Melinda K. v. Superior Court* (2004) 116 Cal.App.4th 1147, 1158.) When reviewing findings that must be proved by clear and convincing evidence, "the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true. In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the

12

trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011–1012.)

## 2. *Substantial evidence does not support the reasonable services finding*

The issues that led to J.A.'s removal and the juvenile court's jurisdictional findings related to father concerned his failure to protect J.A. from mother, who had mental health issues. The Department believed father did "not have the protective capacities to keep mother . . . out of the home." He had allowed mother full access to J.A.— including allowing mother to pick J.A. up from school—despite the custody order restricting her visitation. He also had admitted he did not know how to "deal with" mother's mental health issues. Nor had father secured a restraining order against mother to protect J.A. immediately after the incident.

Thus, the Department had recommended completion of a parenting education program to help father learn skills for effective parenting and to set healthy boundaries to protect J.A.; and participation in individual counseling to enable father to recognize how parental mental health affected J.A., how to refrain from engaging with mother, and how to protect himself and J.A. from unhealthy relationships. Because the Department suspected father might have an issue with drugs or alcohol,[8]

_____

[8] The Department was concerned about father's prior drug-related arrests, his resistance to random drug testing, and his "disheveled appearance." And, by the time of the disposition hearing, father had tested positive for marijuana twice.

13

it also recommended he undergo random drug testing "to measure his sobriety and willingness to remain alcohol and drug free to promote the safety of the child." Father and J.A. do not contend this plan was unreasonable, but rather that the Department failed to provide or offer—or to make reasonable efforts to provide or offer—the ordered reunification services.

The juvenile court here found the Department failed to provide, offer, or make reasonable efforts to provide or offer reasonable services to parents during the six-month review period. Thus, because the six-month review hearing was delayed until December 3, 2020—at first due to the COVID-19 pandemic, but then because the Department twice failed to give parents proper notice—father did not receive reasonable reunification services for 10 months following the January 29, 2020 disposition order.

In its June 29, 2020 status review report, the Department asserted it had contacted father monthly, but the Title XXs showed the social worker had had minimal contact with father between the January 29, 2020 disposition hearing and the December 3, 2020 six-month review hearing. We can infer the court found this limited contact deficient.

In an apparent response to the court finding its earlier efforts were unreasonable, during the next six-month period the Department increased its sporadic contact with father to monthly contact. This time, the court found the social worker had made reasonable efforts to provide services, noting the social worker called parents every month and parents did not call back. Given parents' lack of response, the court didn't "really know what [else was] expected of the social worker."

The record shows father did not return the social worker's monthly texts and/or telephone calls, for the most part, and was not drug testing. We recognize "the reasonableness of the services provided may depend to some degree upon the parent's willingness to cooperate in the completion of his or her reunification plan." (*In re K.C.* (2012) 212 Cal.App.4th 323, 330.) Nor is the social worker required to "take the parent by the hand and escort him or her to and through classes or counseling sessions." (*In re Michael S.* (1987) 188 Cal.App.3d 1448, 1463, fn. 5.) We cannot conclude on this record, however, that the Department "made *reasonable* efforts to assist [father] in areas where compliance proved difficult." (*In re Riva M., supra*, 235 Cal.App.3d at p. 414.)

As J.A. contends, during this second reunification period, the social worker does not appear to have done anything more than to have asked father, albeit more frequently, for proof of his participation in or completion of his court-ordered services. Indeed, on December 7, 2020—mere days after the court found the Department had failed to provide or offer reasonable reunification services—the social worker asked father for proof of his participation in services. Yet, as the Department had not provided reasonable services to father as of December 3, 2020, it would have been highly unlikely that he had completed his court-ordered programs by December 7, 2020. Moreover, there is no evidence the social worker offered any assistance to father in December 2020—as one would have expected in the wake of the court's order—such as sending him new referrals to update those she had provided to him nearly a year earlier before the pandemic. The Title XXs show the social worker's next contacts with father—January 4 and February 1—were the same:

15

an unanswered text and call to father "in [an] attempt to obtain certificates for court ordered services." No offers of new referrals or other assistance are noted.

Significantly, on March 2, 2021, when the social worker again contacted father to obtain his certificates, father responded that he had been "battling COVID" and unable to attend any of his "sessions and therefore [had] no certificates." Rather than reply with referrals or offers of other assistance to help father participate in his services despite his COVID-19 diagnosis, or to help him restart his programs after he recovered, the social worker texted and called father two days later to ask him again for certificates. Father did not answer. Clearly, if father had not been participating in his services while "battling" a contagious virus, he would not suddenly have participation certificates to offer the Department two days after telling the social worker he had none to give her.

According to the Title XXs, the social worker again contacted father by text or telephone for the same purpose— "to obtain certificates for court ordered services"—on April 7 and June 10, 2021, and father did not respond. Father sent a text to the social worker on April 20, 2021, however, asking for her email address so that he could send the information she had requested. Father also texted the social worker on June 2, 2021, to ask for the drug testing site's phone number.

The Department's May 11, 2021 report generally states the social worker gave father referrals to services on April 1, 2021. As father notes, the Title XXs—the social worker's log of *all* contacts and provided services—do not show the social worker contacted father on April 1, much less that she gave him referrals. Indeed, except for the initial referrals the social worker

16

provided pre-adjudication on December 27, 2019,[9] the Title XXs include no entry for any date indicating the social worker gave father referrals. Nor does the report attach a signed confirmation that father received referrals on April 1, 2021, as the Department's earlier LMI did when the social worker gave father referrals in December 2019.

The juvenile court may have found the Department's report credible—and we defer to its implied credibility finding—but we cannot conclude that sole general statement is sufficient to establish with a high probability that the social worker gave father different or additional referrals on April 1, 2021, designed to bring him into compliance with his case plan. In any event, even if the social worker did give father referrals in April, the Department presented no evidence as to the nature of those referrals to allow the juvenile court to determine they constituted reasonable services under the circumstances. (See *In re Precious J.* (1996) 42 Cal.App.4th 1463, 1478 [the Department, not parent, has "the obligation to make a record at the six-month and twelve-month review hearings establishing that reasonable services were provided"].) For example, the same list of referrals from December 2019 would not necessarily have been reasonably designed to help father comply with his case plan in 2021 when father not only had contracted COVID-19, but pandemic-related restrictions were ever-changing.

The Department argues father never asked the social worker for additional referrals or for help when he had

---

[9] Similarly, when the social worker sent mother referrals by email on February 11, 2020, the Title XXs noted it.

17

COVID-19.  Nor did father testify at the contested 12-month hearing.  He therefore did not state he had not received or needed referrals or that he could not respond to the social worker's messages for some reason—for example, because he had COVID-19.  But a parent's "difficulty meeting the case plan's requirements does not excuse the [Department] from continuing its effort[s] to bring [the parent] into compliance with the court's orders." (*Taylor J., supra*, 223 Cal.App.4th at p. 1451.)  And, "[a] parent is 'not required to complain about the lack of reunification services as a prerequisite to the department fulfilling its statutory obligations.' " (*Melinda K. v. Superior Court, supra*, 116 Cal.App.4th at p. 1158.)

Secondly, as both J.A. and father argue, the Department's delay—until two weeks before the scheduled,[10] contested 12-month review hearing—in mentioning father's parenting class did not satisfy his case plan, also shows the Department's continuing failure to provide or offer reasonable services to father.[11]

*Amanda H., supra*, 166 Cal.App.4th 1340, is instructive on this point.  There, the juvenile court had ordered reunification

_____

[10]    The court scheduled the contested hearing for July 14, 2021, but continued it to July 27, 2021 due to counsel's illness.

[11]    The Department appears to contend father forfeited this argument by not raising it below.  We disagree.  A parent's challenge to a mandatory finding—such as the provision of reasonable reunification services—is not forfeited by a failure to object below.  (See *In re Javier G.* (2006) 137 Cal.App.4th 453, 464 ["Even if the parent does not contest the state of the evidence, he or she preserves the right to challenge it as insufficient to support a particular legal conclusion."].)

services for mother consisting of domestic violence counseling, parent education, and individual counseling. (*Id.* at p. 1343.) At the six-month review hearing, the Department social worker told the juvenile court mother had enrolled in the required programs and recommended the court extend reunification services. (*Ibid.*) Just before the 12-month review hearing, the social worker learned mother was not enrolled in a *separate* domestic violence program. (*Id.* at p. 1344.) As a result, the social worker recommended the court terminate reunification services. (*Ibid.*) Mother testified that, based on what her counselor had told her, she believed her classes would address both parenting and domestic violence and, thus, had not enrolled in a separate domestic violence course. (*Ibid.*) When she learned she needed a separate course, she enrolled in one. (*Ibid.*)

The appellate court reversed the juvenile court's finding the Department made reasonable efforts to provide reunification services, concluding the Department failed to show it provided reasonable services and "also may have thwarted mother's ability adequately to address, before the 12-month hearing, the fundamental problem that led to the children's detention: domestic violence." (*Amanda H., supra*, 166 Cal.App.4th at p. 1347.) The court concluded the Department could not "meet the clear and convincing evidence standard when it [had] told . . . the court for a year that mother was enrolled in the right programs and then, at the 11th hour, used that mistake to ask the court to terminate reunification services." (*Ibid.*)

Here, the Title XXs show father sent the social worker a certificate of completion of a four-hour parenting class in October 2020—nine months before the 12-month review hearing. Yet, the Department's reports before and after the December

2020 hearing and its 12-month status review report did not mention father had provided the certificate. More importantly, nothing in the Title XXs or those reports shows the Department told father that program was not acceptable. Certainly, there is no evidence the social worker gave him another referral to a different parenting program or contacted him to offer another suggestion as to how father could satisfy that requirement. Not until the Department's June 29, 2021 LMI did it note father had provided the social worker with the parenting class certificate or indicate the class was insufficient. At the hearing, the juvenile court nevertheless stated the social worker had told father that the parenting program was not court-approved. Substantial evidence does not support that finding.[12]

The Department distinguishes *Amanda H.*, asserting the social worker here never mistakenly told the court or father that father had satisfied the parenting component of his case plan. Nor did father testify he believed the parenting course satisfied his case plan, as the mother had in *Amanda H.* Father also never offered the certificate into evidence at the six-month review hearing—at which the court found he had not substantially complied with his case plan—or at the 12-month review hearing.

Nevertheless, as it did in *Amanda H.*, the Department here waited until the 11th hour to inform father that the parenting course he had completed nine months earlier was insufficient.

---

[12] Similarly, in its June 29, 2021 LMI, the Department also informed the juvenile court that father had provided the social worker with proof of participation in individual counseling. At the hearing, however, the juvenile court stated father had not participated in individual counseling.

And, the only evidence the Department presented showing it had provided father with referrals for approved parenting classes was the list the social worker gave father in December 2019. There is no evidence that—after receiving the juvenile court's December 2020 ruling of no reasonable efforts—the social worker attempted to or offered to help father find an approved provider for a parenting class, such as by sending him an updated list of parenting course referrals.

The Department also implies there was nothing more the social worker could do, as father did not answer his phone or return the social worker's calls or texts. While it is the parent's responsibility to attend court-ordered programs and address case issues, it is "the social worker's job to maintain adequate contact with the service providers and accurately to inform the juvenile court and [parent] of the sufficiency of the enrolled programs to meet the case plan's requirements." (*Amanda H., supra*, 166 Cal.App.4th at p. 1347.) The Department may not have affirmatively misled the court into believing father's parenting class sufficient, as in *Amanda H.*, but it certainly did not timely inform father or the juvenile court that it failed to meet father's case plan requirements.[13]

_____

[13] Father also contends the Department failed to follow-up with his parenting and counseling service providers. As the Department argues, because the parenting class was not approved, it would not have contacted that provider. But, as we discussed, the Department had a duty to keep father and the juvenile court informed about the sufficiency of that program. There is no evidence father provided the Department with the name of his counseling provider, however, so that the social worker could contact it—at least until she received father's

21

Father's drug use and failure to test concern us. But, they were not a basis for the court's jurisdictional finding and do not appear to have been the primary reason behind J.A.'s removal. Again, the main issues leading to J.A.'s removal from father were his failure to protect J.A. by allowing mother unlimited access to him in violation of the juvenile custody order and his inability to "deal with" mother's mental health issues to keep her away from J.A.—issues the parenting course and counseling sessions were designed to address. To be sure, drug use also would have affected father's ability to address the Department's concerns, and drug testing and a drug program would demonstrate his commitment to sobriety, and in turn, to protecting J.A. Nevertheless, father's failure in one part of his plan was not a reason for the Department not to make reasonable efforts to provide, or at least to offer, reasonable reunification services to him. (*Taylor J., supra*, 223 Cal.App.4th at p. 1451.)

Nor do we intend to imply the social worker was required to follow up constantly with father when he did not return her texts or calls—that would not have been reasonable. But, even as here, where a parent responds in a limited fashion, the social worker should assess what the Department reasonably can offer or provide to the parent based on the specific circumstances. Here, father said he had been unable to attend his programs because he had COVID-19. Given that revelation, it would have been reasonable for the Department to contact father to ask if he needed different referrals, or to offer new ones or some other assistance, rather than simply to call back and ask for proof of

counseling certificate, which apparently occurred sometime before the Department filed its June 2021 LMI.

his participation. True, father still may not have complied with his case plan. But, the Department at least had to make *some* effort to assist or offer to assist father in his difficulties complying with his case plan. (*In re K.C., supra*, 212 Cal.App.4th at p. 329 [Department's effort to provide reasonable reunification services must be made " 'in spite of difficulties in doing so or the prospects of success' "].)

The Department already had failed to provide father reasonable reunification services for at least ten months. It made no effort to give or offer father additional assistance in the following months; it only asked father for proof of his participation. And, akin to the social worker in *Amanda H.*, the social worker here acknowledged she received father's proof that he had completed a parenting class, but there is no evidence she told him the class was unsatisfactory. Under these circumstances—particularly given father told the Department he could not participate in his services because he was "battling" COVID-19—and keeping in mind the Department's heightened burden of proof, we cannot conclude substantial evidence supports the juvenile court's finding that the Department offered father reasonable reunification services.

### 3.    *Reunification services must be continued*

The Department contends the juvenile court properly terminated reunification services because the case was past the 18-month date, and it found there was no substantial probability that J.A. could be returned to his parents. Our review is strictly on the reasonable services issue, however. (*M.F., supra*, 32 Cal.App.5th at p. 18 ["reviewing court addresses the issue of reasonable services independently of the issue whether there

is a substantial probability the child will be returned to the physical custody of the parent within the extended time period"].)

"Ordinarily reunification services are available to parents for a maximum of 18 months from the physical removal of the children from their home.  (§ 361.5, subd. (a)(3)(A).)"  (*T.J. v. Superior Court* (2018) 21 Cal.App.5th 1229, 1251 (*T.J.*).)  Here, J.A. was detained on November 15, 2019—20 months before the July 27, 2021, 12-month review hearing.  Courts have held that where "a timely challenge to the adequacy of services for the statutorily required minimum period—here, 12 months— is sustained, that failure to provide services will justify the extension of services beyond 18 months, even without a showing of best interests of the child or substantial probability of return, and even if the permanent plan is not to return the child to the parent."  (*Id.* at pp. 1256–1258 [finding reasonable services were not provided and directing juvenile court to order additional period of reunification services for parent, "so long as the period of extended services does not run beyond 24 months from removal"]; see also *M.F., supra*, 32 Cal.App.5th at pp. 20–24 [describing split in authority and following *T.J.* to conclude "juvenile court has little discretion but to offer an additional period of services to the parent where the agency has not met its burden of proof with respect to services"]; *Taylor J., supra*, 223 Cal.App.4th at p. 1453 [" 'The remedy for a failure to provide reasonable reunification services is an order for the continued provision of services, even beyond the 18-month review hearing.' "].)  We agree and shall direct the juvenile court to reinstate father's reunification services until a combined 18-month/24-month review hearing.

We note that—due to delays in this case—as of November 15, 2021, J.A. will have been detained from father for 24 months—the maximum statutory period allowed for court-ordered services. (§ 361.5, subd. (a)(4)(A).) That date is fast approaching. Realistically, *reasonable* reunification services cannot be provided by then. Courts have ordered reunification services to be provided beyond the 24-month statutory limit in cases where reunification services were denied, or reasonable services were not provided, and the statutory period has expired or will expire before those reunification services can be delivered. (See *In re M.S.*, *supra*, 41 Cal.App.5th at pp. 595–597 [holding mother was entitled to six-month period of reasonable reunification services, despite expiration of 24-month statutory period, where juvenile court erroneously had denied mother reunification services at jurisdiction and disposition hearing and later terminated her parental rights]; see also *Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415, 1419–1420, 1428 [concluding parents were not provided reasonable reunification services and directing court to continue 18-month review hearing for six months and for agency to provide six additional months of reunification services, which would exceed 24-month statutory limit where child was removed January 2010 and opinion issued January 2012].)[14]

---

[14] We recognize the appellate court in *T.J.* directed the juvenile court to order an additional period of reunification services not to extend beyond 24 months from the child's removal. (*T.J.*, *supra*, 21 Cal.App.5th at pp. 1257–1258.) There, however, the 24-month period would not expire for almost another five months from the filing of the court's opinion. (*Id.* at p. 1251

25

Courts also have found reunification services can be extended beyond the statutory time limit through a continuance of the permanency review hearing under section 352. (§ 352, subd. (a) [court may continue hearing beyond required time limit on showing of good cause unless contrary to minor's interest]; see, e.g., *In re D.N.* (2020) 56 Cal.App.5th 741, 744, 762 [reversing denial of request for continuance of permanency review hearing, explaining, "[n]otwithstanding . . . statutory limits on reunification services, a juvenile court may invoke section 352 to extend family reunification services beyond these limits if there are 'extraordinary circumstances which militate[ ] in favor of' such an extension"].) "Extraordinary circumstances exist when 'inadequate services' are offered by the child welfare agency or 'an external force over which [the parent has] no control' prevented the parent from completing a case plan." (*D.N.*, at p. 762.) Here, the Department twice failed to provide or offer reasonable services to father. And, setting a combined 18-month/24-month review hearing beyond 24 months from J.A.'s removal is not contrary to his interests—J.A. is 16 years old, wants to reunify with father, and is living with his brother.

We leave to the juvenile court's discretion to determine, based on the current circumstances, the timing of the combined 18-month/24-month review hearing.

---

[18-month mark fell on February 22, 2018; opinion filed March 29, 2018].)

26

## DISPOSITION

The petition is granted.  The juvenile court is ordered immediately to (1) vacate its order of July 27, 2021 finding reasonable services were provided or offered to father, terminating father's reunification services, and setting a section 366.26 hearing; (2) enter a new order finding reasonable reunification services were not provided or offered to father; (3) order the Department to provide father with reunification services until a combined 18-month/24-month review hearing is convened; and (4) set an 18-month/24-month combined hearing date.  This decision is final as to this court immediately.  (Cal. Rules of Court, rule 8.490(b)(2)(A).)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

EDMON P. J.

LAVIN, J.

27